# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| SUSAN JOHNSON et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 2:17-cv-00264-JDL |
| CITY OF BIDDEFORD, et al. | ) ) ) | |
| Defendants. | ) | |

### ORDER ON PARTIAL MOTION TO DISMISS

On December 29, 2012, James Pak entered Susan Johnson's apartment in Biddeford and shot Johnson, her son Derrick Thompson, and Thompson's girlfriend Alivia Welch, while Johnson's minor son, B.L. listened from another room in the apartment. Thompson and Welch both died from their gunshot wounds, but Johnson survived. In February 2016, Pak pled guilty to two counts of homicide and was sentenced to life in prison.

Johnson brings this action on her own behalf, on behalf of her minor son B.L., and as representative for the Estate of Derrick Thompson (hereinafter, "Johnson"), seeking money damages based on the law enforcement response to the altercation that preceded and led to the shootings. The defendants include the City of Biddeford, Police Chief Roger P. Beaupre, and Edward Dexter and Jacob Wolterbeek, two of the City's police officers ("the Biddeford Defendants").[1] The complaint also names as

---

[1] The Biddeford Police Department was previously named as a defendant but is not a legal entity separate from the City of Biddeford. Accordingly, the Biddeford Police Department and City of Biddeford are treated as one party - the City of Biddeford.

defendants the Maine Department of Public Safety, its Commissioner, John E. Morris, and Jane Doe(s), one or two unnamed police officer(s) and/or dispatch employee(s).

The Biddeford Defendants move to dismiss the state law counts asserted in Johnson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Those counts include wrongful death (count VI), intentional infliction of emotional distress (counts VII, and X), and negligent infliction of emotional distress (count VIII, and XI). ECF No. 4 at 1; ECF No. 1 at 8-11. The Biddeford Defendants argue that the state law counts are time-barred by the two-year statute of limitations contained in the Maine Tort Claims Act, which governs tort actions against governmental entities, 14 M.R.S.A. § 8110 (2016). It states, in relevant part, that "Every claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues." Arguing that because Johnson's state law causes of action accrued on the day of the shooting, December 29, 2012, the Biddeford Defendants contend that the two-year limitations period ended on December 29, 2014, long before Johnson initiated this lawsuit in July 2017.

In response, Johnson contends that her state law causes of action accrued, at the earliest, on February 11, 2016, the date of Pak's homicide convictions and the first date on which it was possible for her to obtain access to investigatory records from the Maine Attorney General's Office which, she claims, revealed evidence about the crime that had not been publically available. The evidence included an audio recording of the police officers' encounter with Pak shortly before the shootings in

2

which Pak admitted that he had threatened Derrick Thompson and Susan Johnson, and threatened that there would be "a bloody mess" and the officers "would see it on the news." ECF No. 5 at 2. This information was not discoverable, Johnson contends, until Pak was convicted of the homicides because of the confidentiality requirements of the Maine Intelligence and Investigative Record Information Act, 16 M.R.S.A. § 801, *et seq.* (2016), which compelled the Maine Attorney General's Office not to publicly disseminate the details of its investigation about the shooting until after the completion of its prosecution of Pak for homicide. *See* 16 M.R.S.A. § 804(1), (2) (prohibiting the dissemination of information that will "[i]nterfere with law enforcement proceedings relating to crimes" or will "[r]esult in public dissemination of prejudicial information concerning an accused person or concerning the prosecution's evidence that will interfere with the ability of a court to impanel an impartial jury").

Johnson argues that she exercised due diligence in seeking the State's investigatory records and could only then have recognized the basis of her state law claims: that the Biddeford Police Department ignored threats Pak made in the officers' presence, and that there is a causal connection between those threats and the officers' failure to prevent the shootings that followed.

In the parties' written submissions and at the hearing on the motion held on October 27, 2017, neither party cited to the decisions of the Maine Law Court regarding what constitutes the "accrual" of a cause of action for purposes of the Maine Tort Claims Act. I therefore requested the parties submit, in writing, citations to the Maine decisional law that each party relies on in support of their respective positions.

3

The Biddeford Defendants' written submission cites to *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir. 2002) (citing *Bernier v. Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998), which concerns the discovery rule and doctrine of equitable tolling under federal law, but does not cite to any decision by the Maine Law Court.[2]

In support of her position that her state law causes of action accrued upon her receipt of the investigatory records in 2016, Johnson's submission cites to the Maine Law Court's decision in *McLaughlin v. Superintending School Comm. of Lincolnville*, 832 A.2d 782 (Me. 2003). In *McLaughlin*, the court declined to consider the application of the discovery rule in fixing the date of accrual of a cause of action under the Maine Tort Claims Act, but, citing its earlier decision in *Townsend v. Chute Chemical Co.*, 691 A.2d 199, 202 (Me. 1997), recognized in dicta "that for the defendant to prevail on a statute of limitations defense, the defendant [has] the burden of establishing both that the plaintiff's injury occurred outside the statute of limitations and that the existence of the causal relationship was known outside the statute of limitations." *McLaughlin*, 832 A.2d at 789.

I find this approach persuasive, and both parties' arguments at the hearing and in their briefing assume its application: Johnson contends that the Biddeford Defendants have failed to demonstrate that the existence of the causal relationship between the police officers' discussion with Pak and the shooting that followed, was either known or could have been known by her, any sooner than when she was

---

[2] By citing *Gonzalez*, which applies the discovery rule and equitable tolling to Federal Tort Claims Act claims, 284 F.3d at 288-92, the Biddeford Defendants do not question the applicability of either the discovery rule or equitable tolling to the present case, and, therefore, I do not address those issues further.

4

provided access to the Maine Attorney General's Office's investigatory records in 2016, ECF No. 16 at 2; the Biddeford Defendants, meanwhile, citing allegations made in Johnson's complaint, respond that Johnson knew of a possible causal connection between the police officer's discussion with Pak and the shooting that followed immediately after the shootings occurred. ECF No. 15 at 2-3.

Johnson's complaint alleges that when Derrick Thompson called the police for assistance on December 29, 2012, he informed the police that his landlord, Pak, was making death threats:

> 19. Shortly before 6:00pm on December 29, 2012 Derrick Thompson called and requested police assistance at 17 Sokokis Road, Biddeford, Maine.
>
> 20. In his call Derrick Thompson indicated that his landlord (later identified as James Pak) was making death threats to and pointing his finger like a gun at Derrick Thompson.
>
> 21. Officers Dexter and Wolterbeek from Biddeford police department arrived and spent approximately 40 minutes speaking with Derrick Thompson, Susan Johnson and James Pak in their respective apartments.

ECF No. 1 at 3. The Biddeford Defendants thus contend that Johnson knew, as of December 29, 2012, the day of the shooting, that Pak had made death threats and that, after responding to the phone call, the officers did not arrest Pak or take other steps to prevent the shootings. They further argue that evidence regarding the threats Pak voiced directly to the police officers may provide additional support for the state law counts in Johnson's complaint, but the additional evidence was not necessary to provide Johnson a "reason to understand the causal relationship," *McLaughlin*, 832 A.2d at 789, between the police officers' failure to prevent the shootings in response to Thompson's phone call and the harm that ensued.

5

Viewing the allegations of the complaint and the affidavit and other materials submitted by Johnson in the light most favorable to her as the non-moving party, *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir. 2013), I conclude that the Biddeford Defendants have not met their burden. Johnson does not base her state law claims solely or even primarily on the information communicated by Thompson when he called the police. A fair reading of the complaint instructs that it was the information that the police had obtained from speaking with and observing Pak, in combination with the initial information communicated by Thompson over the phone, that Johnson alleges should have caused the police to act to protect her and the others:

> 22. During his conversation with James Pak Officer Dexter and/or Wolterbeek witnessed Pak making verbal threats about Derrick Thompson, Susan Johnson and/or Alivia Welch. Pak indicated he was upset about the parking situation with his tenant, Susan Johnson, her son, Derrick Thompson and Thompson's girlfriend, Alivia Welch. Officer Dexter and/or Wolterbeek spent significant time discussing with Pak that landlord-tenant matters are civil in nature, and the officer cannot order anybody to move their car. James Pak admitted to threatening to shoot Thompson, Johnson and/or Welch. Officer Dexter and/or Wolterbeek responded by telling Pak that he can't make those types of threats.
>
> 23. James Pak's emotional state continued to heighten while speaking with Officer Dexter and/or Wolterbeek. James Pak told the Officer that he had a gun and if the Officer didn't do something about the parking "there is going to be a bloody mess" and that "they would see it in the news."
>
> 24. Neither responding officer searched for weapons in James Pak's apartment. Neither responding officer arrested James Pak for the threats made to Derrick Thompson, Susan Johnson and/or Alivia Welch. The Officers cleared the scene.

25. Within minutes of the Officers leaving, James Pak had entered Susan Johnson's apartment and shot Susan Johnson, Derrick Thompson and Alivia Welch.

ECF No. 1 at 3.

The Biddeford Defendants have not disputed Johnson's assertion that she could not have discovered the information contained in paragraphs 22, 23, and 24 of the complaint sooner than February 11, 2016, the earliest date that the information became discoverable in accordance with the Maine Intelligence and Investigative Record Information Act, 16 M.R.S.A. § 804(1), (2). They have thus failed to show that Johnson had reason to know of a causal relationship between the police officers' response to the emergency call and the shootings sooner than February 11, 2016.

It is ORDERED that the Biddeford Defendants' partial motion to dismiss (ECF No. 4) is DENIED.

**SO ORDERED.**

**Dated this 6th day of December 2017.**

                                                    **/s/ JON D. LEVY**
                                                    **U.S. DISTRICT JUDGE**