# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SUSAN JOHNSON, *individually and on behalf of her minor son, B.L., and on behalf of Derrick Thompson, deceased.* | )<br>)<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) 2:17-cv-00264-JDL<br>) |
| CITY OF BIDDEFORD, et al. | )<br>) |
| **Defendants.** | ) |

## ORDER ON MAINE DEPARTMENT OF PUBLIC SAFETY AND COMMISSIONER JOHN E. MORRIS' MOTION TO DISMISS

Defendants Maine Department of Public Safety ("DPS") and its Commissioner, John E. Morris (collectively, the "State Defendants")[1] have moved to dismiss the two counts of the complaint against them (Counts I and V) that allege federal claims under 42 U.S.C.A. §§ 1983 and 1985. They also move to dismiss the remaining state law claims brought against them (Counts VI through XIII), urging the Court not to exercise supplemental jurisdiction. For the reasons that follow, I grant the State Defendants' Motion to Dismiss (ECF No. 18) as to Counts I and V, and deny the Motion as to Counts VI through XIII.

---

[1] The other named defendants are the City of Biddeford, Police Chief Roger P. Beaupre, Edward Dexter and Jacob Wolterbeek (two of the City's police officers), and Jane Doe(s) (one or two unnamed police officer(s) and/or dispatch employee(s)). The Biddeford Police Department was previously named as a Defendant but is not a legal entity separate from the City of Biddeford. Accordingly, the Biddeford Police Department and City of Biddeford are treated as one party–the City of Biddeford.

## I. BACKGROUND

On December 29, 2012, James Pak entered Susan Johnson's apartment in Biddeford and shot Johnson, her son Derrick Thompson, and Thompson's girlfriend Alivia Welch, while Johnson's minor son, B.L., listened from another room in the apartment. Thompson and Welch both died from their gunshot wounds.

Prior to the shooting, Derrick Thompson had called the police to report that Pak, his landlord, was making death threats because of a landlord-tenant dispute over parking. Two officers from the Biddeford Police Department—both defendants in this case—reported to the scene and talked with Pak, Thompson, and Johnson in their apartments for roughly 40 minutes. Pak allegedly admitted to making death threats, told the officers he had a gun, and warned the officers that if they did not do something about the parking situation "there is going to be a bloody mess." ECF No. 1 at ¶ 23. The officers did not arrest Pak or search Pak for weapons before leaving. Shortly after the officers left, Pak entered Susan Johnson's apartment and began shooting.

Johnson brings this action on her own behalf, on behalf of her minor son, B.L., and as the representative of her deceased son, Derrick Thompson (collectively, "Johnson"), seeking money damages based on the law enforcement response to the altercation that preceded and led to the shootings. Johnson alleges that DPS and Morris, as DPS Commissioner, were responsible for implementing and monitoring police training, and that they provided inadequate training to the police officers and officials involved in responding to Derrick Thompson's call to the police. In so doing,

2

Johnson alleges, the State Defendants acted in concert to deny her the protections of the Constitution in violation of § 1983 and § 1985.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted). The Court accepts all well-pleaded facts as true and may ignore conclusory legal allegations, *id.*, and all reasonable inferences are drawn in favor of the non-moving party. *Id.* at 16. The complaint must contain facts that support a reasonable inference "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Saldivar*, 818 F.3d at 18 (quoting *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011) (quotation marks omitted)). The defendant bears the burden of demonstrating that a complaint does not state a legally cognizable claim for which relief can be granted. *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2017 Update).

## III. ANALYSIS

I address, in order, the State Defendants' argument for dismissal of Johnson's (1) § 1985 claim against the State Defendants (Count I), (2) § 1983 claim against Morris (Count V),[2] and (3) state law claims (Counts VI through XIII).

### A.     42 U.S.C.A. § 1985

The State Defendants argue that Johnson fails to state a claim pursuant to § 1985(3) because, first, Johnson has not pleaded particularized facts alleging a conspiracy, and second, there are no allegations of "racial, or . . . otherwise class-based, invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).[3]

In opposition, Johnson has neither objected nor responded to the State Defendants' first argument that there are insufficient allegations of conspiracy to state a claim pursuant to § 1985.  Pursuant to Local Rule 7(b), "[f]ailure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]" *Andrews v. Am. Red Cross Blood Servs., New England Region*, 251 F. Supp. 2d 976, 979 (D. Me. 2003).  However, in an excess of caution, I address the merits of the State Defendants' argument.

---

[2] Although the State Defendants move to dismiss a § 1983 claim against DPS, there is no such claim in Johnson's Complaint, and I therefore do not address the same.

[3] Section 1985 states in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3) (2018).

"[A] claim of conspiracy must allege facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement." *Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 318 (D. Mass. 2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Here, Johnson has not alleged any facts that could suggest a conspiracy or an agreement of any kind between the State Defendants, or between the State Defendants and any other party. The only alleged connection the State Defendants have to the events giving rise to this case is that at the time of the shooting, DPS was responsible for monitoring police training and conduct, and Morris was the Commissioner of DPS. These allegations are insufficient to state a claim for § 1985(3) conspiracy. *See Rolón v. Rafael Rosario & Assocs., Inc.*, 450 F. Supp. 2d 153, 159 (D.P.R. 2006) ("Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end."); *Francis-Sobel v. Univ. of Maine*, 597 F.2d 15, 17 (1st Cir. 1979) (allegations of bureaucratic inefficiency and disregard of proper procedure insufficient to link defendants in pleading § 1985(3) conspiracy).

Even if Johnson had plead sufficient facts to support a conspiracy, her claim would still fail because there are no allegations of "class-based, invidiously discriminatory animus" behind the State Defendants' alleged actions, which are required to state a § 1985 claim. *See Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (quoting *Griffin*, 403 U.S. at 102) ("An actionable section 1985(3) claim must allege that . . . the alleged conspirators possessed some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]") (internal quotation marks omitted). Johnson argues, citing the Supreme Court's decision in *Village of Willowbrook v. Olech* that a "class of one" can state an equal protection claim without

5

class-based or invidious animus where there is irrational and arbitrary differential treatment. 528 U.S. 562, 564-65 (2000) (per curiam). Even assuming, *arguendo*, that this standard applies, Johnson's § 1985(3) claim still fails because Johnson does not allege any differential treatment. *See Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014) ("In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential.").

For the above reasons, Johnson has failed to state a claim pursuant to § 1985(3), and I therefore dismiss Count I against the State Defendants.

**B.    42 U.S.C.A. § 1983**

The State Defendants argue that Johnson's § 1983 claim against Morris must be dismissed because there are no allegations that he engaged in any unconstitutional conduct, and he cannot be held liable under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Johnson does not dispute that a theory of *respondeat superior* is insufficient, but counters that she has alleged facts showing that Morris was a "prime mover" behind the alleged violation.

Johnson alleges liability against Morris as Commissioner of DPS on the basis of his responsibility for "implementing, developing, and monitoring [] policies concerning the training, supervisions and conduct of [the defendants]," ECF No. 1 at ¶¶ 15-17, 55-58, and his responsibility for the "coordination and cooperation of all law enforcement officers and agencies" in Maine. ECF No. 22 at 5. Thus, Johnson's claim is fairly characterized as one for supervisory liability. *See Sanchez v. Pereira-Castillo*,

6

590 F.3d 31, 48-49 (1st Cir. 2009) (finding claims against administrative defendants for failure to adequately train subordinates implicated supervisory liability under § 1983). In the context of § 1983, supervisor liability may take two forms:

> [E]ither the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Camilo–Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). In the latter scenario, relevant here, the analysis focuses on "whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent tort." *Id*. In either case, the plaintiff in a Section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization," *id*., between the actor and the underlying violation.

*Id.* at 49.

Johnson's Complaint contains no allegations that Morris was a primary violator or direct participant in the tragic events of December 29, 2012. Rather, as described earlier, Johnson alleges supervisor liability in the second form, by arguing that Morris was responsible for training the Defendants present on the night of the shooting (e.g. the officers). Thus, Johnson must show a causal connection or an affirmative link between the civil rights deprivation and Morris' alleged deliberate indifference in his training or supervision. "The showing of causation must be a strong one, as that requirement contemplates proof that the supervisor's conduct led *inexorably* to the constitutional violation." *Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19-20 (1st Cir. 2014) (internal quotation omitted) (emphasis in original).

Johnson, however, makes only conclusory allegations linking Morris to the alleged violation: "[Morris'] failure to adequately implement, train and ensure

7

compliance with [] policies had a direct b[e]aring on the other defendants' actions on the night in question." ECF No. 22 at 5; *see also* ECF No. 1 at ¶¶ 54-60. However, "[t]he deliberate indifference required to establish a [supervisory liability] claim cannot plausibly be inferred from the mere existence of a poorly-implemented . . . policy and a bald assertion that the [violation] somehow resulted from those policies." *Sanchez*, 590 F.3d at 49-50. Johnson's allegations ask the Court to infer liability from a conclusory allegation of a violated policy, and are thus insufficient to state a claim pursuant to § 1983. *Id.* (state prisoner's conclusory allegations that § 1983 violation arose from policies designed by administrative correctional officials were insufficient to state § 1983 claim of supervisory liability); *see also Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (dismissing § 1983 claim against high-level officials where conclusory allegations stated that officials "failed in their duty to assure adequate monitoring, disciplining, evaluating, training and supervising any and all personnel under their charge"), *cert. denied*, 567 U.S. 906 (2012).

Accordingly, Johnson has failed to state a claim pursuant to § 1983 against Morris, and I therefore dismiss Count V.

C.  **State Law Claims**

The State Defendants argue that if Johnson's claims against them pursuant to 42 U.S.C.A. §§ 1983 and 1985—the foundational claims providing original federal jurisdiction—are dismissed, then this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C.A. § 1367(c)(3) (2018).

However, "the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996); *see also Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012) (finding that "[t]he district court's decision here to retain jurisdiction over the plaintiffs' state law claims after dismissing the federal claims fell squarely within the realm of its discretion"). In deciding whether to exercise supplemental jurisdiction in such a circumstance, a judge "must take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Roche*, 81 F.3d at 257.

Here, although I am dismissing the federal claims against the State Defendants, federal claims remain against the other Defendants that arise from the same nucleus of operative facts. *See* 16 Moore's Federal Practice, § 106.66[1] (3rd ed. 1998) ("If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present."); *see also Irizarry-Santiago v. Essilor Indus.*, 929 F. Supp. 2d 30, 34 (D.P.R. 2013) (finding exercise of supplemental jurisdiction over state law claims against defendant against whom there were no federal claims was appropriate because the claims arose from the same nucleus of operative facts as federal claims against another defendant); *Audette v. Carrillo*, No. 15-CV-13280-ADB, 2017 WL 1025668, at *3 (D. Mass. Mar. 16, 2017) (same). Because this case will continue in this Court as to the other defendants, I conclude that both judicial economy and fairness weigh in favor of exercising supplemental jurisdiction

9

over Johnson's state law claims against the State Defendants, so that all of the legal claims that arise from the events of December 29, 2012, are determined in a single proceeding. I therefore deny the State Defendants' Motion to Dismiss as to Counts VI through XIII.

## IV. CONCLUSION

For the reasons explained above, the State Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED** as to Counts I and V, and **DENIED** as to Counts VI through XIII.

**SO ORDERED.**

**Dated this 6th day of March 2018.**

                                                          /s/ Jon D. Levy
                                                    **U.S. DISTRICT JUDGE**