# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### Civil Action No. 17-cv-00264-JDL

| |
|---|
| **SUSAN JOHNSON, individually and on behalf of her minor son B.L., and on behalf of DERRICK THOMPSON, deceased,** Plaintiff |
| **v.** |
| **CITY OF BIDDEFORD, BIDDEFORD POLICE DEPARTMENT, a Municipal Corporation organized and existing under the laws of the State of Maine; MAINE DEPARTMENT OF PUBLIC SAFETY, a state agency organized under the laws of the State of Maine; JOHN E. MORRIS, individually and as the Commissioner of the Maine Department of Public Safety; ROGER BEAUPRE, individually and as Chief of Biddeford Police Department; EDWARD DEXTER, individually and as an employee of the Biddeford Police Department; JACOB WOLTERBEEK, individually and as an employee of the Biddeford Police Department and JANE DOE,** Defendants |

## MEMORANDUM OF LAW IN SUPPORT OF
## INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure Rule 56, this Memorandum is submitted in support of the Defendants, the City of Biddeford, Roger Beaupre, Edward Dexter, and Jacob Wolterbeek, ("Defendants"), Motion for Summary Judgment seeking judgment as a matter of law on all claims made against them in the Plaintiff's Complaint in the matter of *Susan Johnson v. Biddeford Police Dept.*, et al. 2:17-cv-00264-JDL ("Johnson Complaint") and all claims made against them in the Plaintiff's Complaint in the consolidated matter of *Jocelyne Welch v. City of New Bedford,* et al. 2:18-cv-00160-JDL ("Welch Complaint").

The Johnson Complaint brings the following claims against the following defendants:

| | | |
|---|---|---|
| Count I | 42 U.S.C. § 1985 | |
| | (All Defendants)[1] | |
| Count II | 42 U.S.C. § 1983 – *Substantive Due Process* | |
| | (Edward Dexter) | |
| Count III | 42 U.S.C. § 1983 – *Substantive Due Process* | |
| | (Jacob Wolterbeek) | |
| Count IV | 42 U.S.C. § 1983 – *Monell* | |
| | (Roger P. Beaupre) | |
| Count VI | 18-A M.R.S.A. § 2-804 | |
| | (All Defendants) | |
| Count VII | Intentional Infliction of Emotional Distress upon Derrick Thompson | |
| | (All Defendants) | |
| Count VIII | Negligent Infliction of Emotional Distress upon Derrick Thompson | |
| | (All Defendants) | |
| Count IX | Assault and Battery upon Susan Johnson | |
| | (All Defendants) | |
| Count X | Intentional Infliction of Emotional Distress upon Susan Johnson | |
| | (All Defendants) | |
| Count XI | Negligent Infliction of Emotional Distress upon Susan Johnson | |
| | (All Defendants) | |
| Count XII | Intentional Infliction of Emotional Distress upon B.L. | |
| | (All Defendants) | |
| Count XIII | Negligent Infliction of Emotional Distress upon B.L. | |
| | (All Defendants) | |

The Welch Complaint brings the following claims against the following defendants:

| | | |
|---|---|---|
| Count I | 42 U.S.C. § 1985 | |
| | (All Defendants) | |
| Count II | 42 U.S.C. § 1983 – *Substantive Due Process* | |
| | (Edward Dexter) | |
| Count III | 42 U.S.C. § 1983 – *Substantive Due Process* | |
| | (Jacob Wolterbeek) | |
| Count IV | 42 U.S.C § 1983 – *Monell* | |
| | (Roger Beaupre) | |
| Count V | 42 U.S.C. § 1983 – *Monell* | |
| | (City of Biddeford) | |
| Count VI | 5 M.R.S.A. § 4682 | |
| | (All Defendants) | |
| Count VII | Civil Conspiracy | |
| | (All Defendants) | |
| Count VIII | Negligence | |
| | (All Defendants) | |

---

[1] The Johnson Complaint impleads the City of Biddeford Police Department and Jane Does; neither of which are named Defendants in the Welch Complaint.

## I.   STATEMENT OF FACTS

The individual defendants rely on the *Statement of Material Facts in support of Defendants' Motions for Summary Judgment.*

## II.   STANDARD OF REVIEW

Summary judgment should enter where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.'" *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 33 (1st Cir. 2001) (citing Fed. R. Civ. P. 56(c)).

## III.  APPLICABLE LAW

### A.     42 U.S.C. § 1985

"Section 1985(3) prohibits two or more persons in any State or Territory from conspiring to deprive any person or class of persons of the equal protection of the laws." *Perez-Sanchez v. Public Bldg. Auth.,* 531 F.3d 104, 107 (1st Cir. 2008) (internal punctuation, quotation marks, and citation omitted). The claim has four elements: "First, the plaintiff must [show evidence of] a conspiracy; second [the plaintiff] must [show evidence of] a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third [the plaintiff] must identify an overt act in furtherance of the conspiracy; and finally, [the plaintiff] must show either injury to person or property, or a deprivation of a constitutionally protected right." *Id.* at 107.

### B.     42 U.S.C. § 1983

It is well established, that § 1983 creates no independent substantive rights but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Hence, to state a claim under § 1983, a plaintiff must allege (1) the

violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law. *See, e.g., Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### C.    Substantive Due Process

Substantive due process prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.' *County of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998).  The law specific to the Plaintiffs' substantive due process claims in the instant matter is more fully addressed in the argument section below.

### D.    Qualified Immunity

Qualified immunity is intended to provide government officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). It provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); see also *Davis v. Scherer*, 468 U.S. at 191; *Bonitz v. Fair*, 804 F.2d 164 (1st Cir. 1986). The First Circuit has set out the following test for determining whether qualified immunity is applicable: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, similarly situated to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Limone v. Condone*, 372 F.3d 39, 44 (1st Cir. 2004).  Qualified immunity "protects all but 'the plainly incompetent and those

who knowingly violate the law.'" *Pagan v. Calderon*, 448 F.3d 16, 31 (1st Cir. 2006) quoting *Malley v. Brigs*, 474 U.S. 335, 341 (1986).

Whether the doctrine of qualified immunity applies is a question of law, *Tatro v. Kervin*, 41 F.3d 9, 15 (1st Cir. 1994); *Whiting v. Kirk*, 960 F.2d 248, 250 (1st Cir. 1992). The doctrine is not just a defense; it protects the defendant from suit and therefore it should be raised and decided at the earliest practicable moment. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The clearly established "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" See *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) *quoting Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (*quoting Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Put another way, the law must have been sufficiently clear that "any reasonable official in the defendant's position would have known that the challenged conduct is illegal 'in the particular circumstances that he or she faced.'" *Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Such precision ensures that government officials are "penalize[d] . . . for violating 'bright lines,' [but] not for making 'bad guesses in gray areas.'" Id. at 215 (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992)).

Qualified immunity applies to the federal claims and to Ms. Welch's claim under the Maine Civil Rights Act (5 M.R.S.A. § 4682). *Adle v. Maine State Police Dep't*, 279 F. Supp. 3d 337, 361 (D. Me. 2017) (because the MCRA uses the same standard for qualified immunity for an excessive force claim as the federal standard, no independent analysis is required for the parallel state claim).

### E.        Monell

The doctrine that a municipality cannot incur liability under § 1983 based on *respondeat superior* is well established. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) ("municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). It is well-settled in

the First Circuit that to establish municipal liability under § 1983 there must be a finding of two preliminary elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the Town is responsible for that violation, an element which has three components.   First, the alleged municipal action at issue must constitute a 'policy or custom' attributable to the Town. Second, the municipal policy or custom must actually have caused plaintiff's injury; and third, "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005).

**F.      18-A M.R.S.A. § 2-804**

18-A M.R.S.A. §2-804(a) controls Counts VI through VIII of the Complaint – the claims brought by Susan Johnson on behalf of the Estate of Derrick Thompson.   Section 2-804(a) states as follows:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person or the corporation that would have been liable if death had not ensued shall be liable for damages as provided in this section, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as shall amount to a felony.

180-A M.R.S.A. § 2-804(a).

The Wrongful Death Statute provides a means for a claim by a decedent's personal representative, either for the death itself or suffering prior to death. Me. Rev. Stat. Ann. tit. 18-A, § 2-804. It does not confer any separate cause of action, but depends on an independent cause of action to exist under the law.  *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 264 (D. Me. 2010). Count VI of the Johnson Complaint pleads 18-A M.R.S.A. § 2-804 as a separate claim though it is not a separate cause of action under the law.  For this reason, Count VI of the Johnson Complaint will not be separately addressed below.

Further, Section 2-804(d) states that any action under Section 2-804 against a governmental entity shall be limited as provided by the Maine Tort Claims Act.  The Maine Tort Claims Act, aside from proscribing the damages that may be sought, limits all of the state law claims brought against the municipality and municipal employees acting on behalf of the Town of Biddeford.  14 M.R.S.A. § 8102.  This includes counts VII and VIII of the Johnson Complaint and counts VII and VIII of the Welch Complaint.

### G.      5 M.R.S.A. § 4682

To prevail on her Maine Civil Rights Act claim, Ms. Welch must prove, among other things that the individual defendants used or threatened physical force or violence when they deprived the decedent of a constitutional or statutory right. 5 M.R.S. §§ 4682(1-A), 4684 (2013); *Clifford v. Maine Gen. Med. Ctr.*, 91 A.3d 567, 589 n.22 (Me. 2014); *see also Bagley v. Raymond Sch. Dep't*, 1999 ME 60, P 10 n.5, 728 A.2d 127 (affirming the grant of summary judgment to the defendants on the plaintiffs' MCRA claim, citing 5 M.R.S. § 4681 (Supp. 1998), solely on the basis that the plaintiffs did not present any claim of the use or threat of physical force or violence).

### H.      Intentional Infliction of Emotional Distress

To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his/her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Curtis v. Porter*, 784 A.2d 18, 20 (Me. 2001)

## I.        Negligent Infliction of Emotional Distress

A plaintiff must set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. *Devine v. Roche Biomed. Labs., Inc.*, 637 A.2d 441, 447 (Me. 1994). Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability. Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others. *Curtis v. Porter*, 784 A.2d 18, 25 (Me. 2001)(internal citations omitted).  The Supreme Judicial Court has recognized very limited circumstances in which a negligent infliction claim may be brought.  *Id.*  First, in claims commonly referred to as bystander liability actions; second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed; and, third, when the wrong doer has committed another tort.  *Id.* As is addressed below, none of the above circumstances apply the facts of this case.

## J.        Negligence Immunity

"Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." 14 M.R.S. § 8111(1) (2016).

The Law Court has used the following four-factor test to determine whether discretionary function immunity applies:

(1)     Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?

(2)     Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective?

(3)     Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4)     Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928. For purposes of state immunity law, a police officer's decision to arrest an individual is a discretionary act. *Fortin v. Titcomb*, 60 A.3d 765, 773 (Me. 2013).  Maine law provides immunity to a police officer unless the officer's conduct was so egregious that it clearly exceeded the scope of any discretion an officer could have possessed in his or her capacity as a police officer.  *Id.*  Also, if a police officer's conduct exceeds the scope of his discretion, he may lose the immunity. See *Polley v. Atwell*, 581 A.2d 410, 413-14 (Me. 1990).

The decision to arrest is a core discretionary function of a municipal police officer by statute in Maine.   See Me. Rev. Stat. tit. 30-A, § 2671 (LexisNexis, Lexis Advance through Chapter 312 with the exception of Chapter 235 of the 1st Regular Session of the 128th Legislature (2017))( Police officers may serve criminal and traffic infraction processes and arrest and prosecute offenders of the law.); See also *Moore v. Lewiston*, 596 A.2d 612, 618 (Me. 1991).

K.     **Assault and Battery**

An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement of the Law, Second, Torts, § 13 (1965). The Law Court uses the term

9

assault and battery idiomatically to refer to a consummated battery. *Borlawsky v. Town of Windam*, 2004 Me. Super. LEXIS 125, * 16 *citing* Simmons, Zillman and Gregory, Maine Tort Law, § 1.04 at 7 (1999).

### L.   Civil Conspiracy

A plaintiff must plead facts that establish the following elements when bringing an action for civil conspiracy: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful acts; and (5) damages. S*ebago, Incv. V. Pena*, CV-99-226 (Me. Super. Ct., Cum. Cty., July 8, 1999) (Crowley, J.) (citations omitted); *see also Cohen v. Bowdoin*, 288 A.2d 106, 109 (Me. 1972) (discussing same essential elements).

## IV. <u>ARGUMENT</u>

Neither the Johnson Plaintiffs nor the Welch Plaintiff have satisfied the requisite elements of proof for their claims.

On December 29, 2012, Officers Dexter and Wolterbeek appeared at 17 Sokokis Road, Biddeford, to respond to Derrick Johnson's call. The evidence demonstrates that Officer Wolterbeek checked with dispatch regarding known weapons or proximity of weapons to the location and dispatch replied noting that the caller had not seen any weapons. Upon arrival, Officer Dexter spoke with Ms. Johnson, Derrick Johnson, and Alivia Welch. The interactions were preserved on the officers' WatchGuard audio recording system.

The recording reflects a conversation between Officer Dexter and Derrick Thompson in which Derrick explained to Officer Dexter his version of what occurred between he and James Pak prior to the officers' arrival. He explained that Pak was screaming at him, got in his face and said "hit me," to which Derrick replied: "I'm not hitting you. I'm not going to jail for this." Officer Dexter

was also shown a cell phone video recording which showed Mr. Pak on his steps yelling with Derrick, appearing vulgar and agitated. Derrick then told Officer Dexter that he thought they had recorded when Mr. Pak threatened him by pointing his finger and saying "bang" towards Derrick and Ms. Johnson, but apparently that was not the case. Derrick stated he has had a similar confrontation with Mr. Pak before but Ms. Johnson had not.

Officer Wolterbeek had a brief conversation with Mr. Pak in the driveway before entering the Johnson's apartment and joined the ongoing conversation. At this time, Officer Dexter asked Derrick if he felt threatened. He replied "not really." The verbatim conversation is transcribed at paragraph 28 of the *Defendants Rule 56 Statement of Undisputed Material Facts*. Officer Dexter, Alivia Welch, Derrick and Ms. Johnson then discussed the parking arrangements and whether they have had disputes over the parking previously. Ms. Welch. Derrick and Susan Johnson confirmed that Mr. Pak is always like that, always yelling, never talking normal.

Officer Dexter went over to speak with James and Armit Pak. This conversation was recorded on the WatchGuard recording system as well. Mrs. Pak initially explained her side of what had occurred before the officers' arrival. She explained that the Derrick and Susan Johnson and Ms. Welch had broken their lease. She explained that they were supposed to meet that same morning to discuss their issues but the three had left. She explained that the Ms. Welch had moved in without permission. Her explanations were all landlord-tenant issues regarding lease and parking violations and also regarded an eviction notice that Mrs. Pak stated she served.

James Pak also explained his side of the dispute. He stated that Derrick had "given him the finger" and said "I would shoot you" to Derrick. Officer Dexter explained to Mr. Pak that he should not be saying such things or threatening. Mr. Pak also claimed that Derrick had threatened him, but Officer Dexter again explained that he cannot threaten to shoot. Mr. Pak then stated "I'm not going to shoot him." The conversation continued.

11

At the conclusion of the conversation Officer Dexter advised the Pak's that the tenancy issues were civil in nature but also to avoid Derrick and Susan Johnson and Ms. Welch for the time being. Mr. Pak was still agitated. He said "I've got nothing to lose" which prompted Officer Dexter to continue the discussion to deescalate Mr. Pak from his agitation. Mr. Pak said "He called me 'jap' he called me names and now I just don't, I don't have any rights?" He also said "You're going to see me in the newspaper." Officer Dexter continued to speak with the Paks and continued his attempts to deescalate. The conversation concluded with Officer Dexter advising Mr. Pak to keep his distance from them and explaining that he was going to advise Ms. Johnson, Mr. Thompson and Ms. Welch to keep their distance as well.

Officer Dexter returned to speak with Ms. Johnson, Mr. Thompson, and Ms. Welch before completing the call. He explained to them that Mr. Pak was extremely upset about the second vehicle. He advised them to avoid Mr. Pak. He advised them that there was not much he could do about lease and tenancy disputes, which are civil matters, but he is able to address harassment and threatening. Ms. Johnson asked Officer Dexter if he was going back to Mr. Pak and he told her he was not, that he was done talking with the Paks. He advised them to keep their distance, wished them luck and advised them to stay in for the night. Ms. Johnson asked a follow up question about whether Mr. Pak was acting calm and wondering if he was going to be normal. Officer Dexter advised Ms. Johnson that Mrs. Pak was present and she stated "Ok." Officer Dexter wished them luck and cleared the call.

Officer Dexter decided not to summons or arrest Mr. Pak for any crimes during this first call. He explained at his deposition that he specifically asked Susan Johnson, Derrick Thompson and Alivia Welch if they were in fear and they communicated that they were not. He advised Mr. Pak that he could not make threats but given the above discussed circumstances he concluded that neither the Maine criminal threatening statute nor the Maine criminal terrorizing statute applied to this incident.

He further concluded that the disorderly conduct did not apply because Mr. Pak's actions did not rise to the requisite level in order to make an arrest.

Thereafter, Mr. Pak walked into the apartment, took a gun out and shot Ms. Johnson, Derrick Thompson and Alivia Welch.

Officer Dexter received a second call to the residence regarding the shooting.  He was the first officer on scene.  When other officers arrived, Officer Dexter entered the back door of the residence, rescued Ms. Johnson's son (B.L.) and then rescued Ms. Johnson.

Derrick Thompson and Alivia Welch died of the injuries inflicted by Mr. Pak.

### A.  Defendants Are Entitled To Summary Judgment On Plaintiffs' 42 U.S.C. § 1985 Claims And For Similar Reasons Are Entitled To Summary Judgment On The Plaintiffs' Civil Conspiracy Claims

Both Plaintiffs have failed to show the existence of a conspiracy to deprive them of equal protection of the law in violation of 42 U.S.C. § 1985.  They have failed to show the existence of a conspiracy, in the first instance.  The facts reflect that two officers – Dexter and Wolterbeek – responded to a call which Officer Dexter viewed principally as a landlord-tenant civil dispute. Though threatening was discussed separately and in the context of the criminal code, Officer Dexter made a discretionary decision not to arrest or summons Mr. Pak for any criminal violations.  He did not believe Mr. Pak to be criminally disorderly.  The terrorizing statute is wholly inapplicable.  See e.g. *State v. Porter*, 384 A.2d 429 (Me. 1978)(discussing the common understanding of terrorizing and the obvious application of Me. Rev. Stat. tit. 17-A, § 210 to certain acts of terrorism).  Finally, Officer Dexter decided not to arrest or summons under the criminal threatening statute because Ms. Johnson, Mr. Thompson, and Ms. Welch all explained that they were not placed in fear.  See *Id.* (fear of imminent bodily injury is a necessary element of the offense of "criminal threatening" under Me. Rev. Stat. tit. 17-A, § 209).  There is no evidence of a conspiracy between Officers Dexter and

Wolterbeek at any point from the time they accepted the call to the time they finished speaking with the individuals and cleared the call because there was no such conspiracy. This truth applies equally to the Plaintiffs' civil conspiracy claims.

Separately, Officers Dexter and Wolterbeek did not violate Ms. Johnson, Mr. Thompson or Ms. Welch's rights to equal protection. A private citizen does not have a right to the prosecution of another private citizen. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)("*Castle Rock*"). In *Castle Rock*, the Supreme Court confirmed that although police protection is a benefit, there is no constitutionally protected right to police enforcement action unless one is specifically provided for by state law. *Id.* More particularly, where the power to arrest is discretionary, there is not a constitutional right held by one citizen in another citizen's arrest. *Id.* In Maine, a police officer's decision to arrest an individual is discretionary. *Fortin v. Titcomb*, 60 A.3d 765, 773 (Me. 2013).

The Supreme Court earlier decided *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989) on the same rationale. There the Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* While the State may not "deprive individuals of life, liberty, or property without 'due process of law,' . . . its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.*

The Plaintiffs have each alleged that the Defendants acted in concern to commit acts against the Plaintiffs to deny them the protections guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The rights guaranteed by the Fourth and Fifth Amendments are wholly inapplicable to the facts of this case. As discussed above and as discussed in Section IV.B below, so too are the rights guaranteed by the Fourteenth Amendment. It also

14

cannot be shown that Officers Dexter and Wolterbeek had a meeting of the minds for the purpose of conspiring to engage in one or more unlawful act. Thus, judgment must enter for the Defendants on each of the Plaintiffs' constitutional and civil conspiracy claims in the Johnson Complaint and the Welch Complaint.

### B. Defendants Are Entitled To Summary Judgment On Plaintiffs Claims Under 42 U.S.C. § 1983 Alleging Violations Of The Substantive Due Process Clause Of The Fourteenth Amendment To The United States Constitution

Officers Dexter and Wolterbeek did not violate Ms. Johnson, Mr. Thompson or Ms. Welch's rights under the substantive due process clause of the Fourteenth Amendment to the United States Constitution. The basic framework of such a claim is discussed in Section III above.

More particularly, the substantive due process analysis in these circumstances requires analysis of whether the state created danger doctrine applies. The First Circuit has most recently resolved the case of *Irish v. Maine*, 849 F.3d 521 (1st Cir. 2017) on this doctrine.

In *Irish*, the victim was engaged in a relationship with a registered sex offender named Lord. She had an on and off relationship with Lord until Irish got a Protection from Abuse ("PFA") order against Lord for herself and her son. The first PFA expired two years later and Irish rekindled the relationship until, again, she started the process of getting another PFA. In July of 2015, Irish met Lord at a grocery store at which time Lord proceeded to abduct and repeatedly rape, strangle and threaten to kill her. She went to the hospital and submitted to a rape kit evaluation the next day and reported what happened to the local police who referred the case to the State Police. Irish submitted a statement to the state police and subsequently advised them that Lord was attempting to contact her. The State Police investigator told Irish that they were going to call Lord, explain the accusations made against him and ask for his side of the story. Irish begged them not to do so stating that Lord would become terribly violent if they did. They called him anyways. When

they called, he did not answer but the investigator left the details on his voicemail requesting a call back.

A few hours after the voicemail, Irish learned her family's barn was on fire. She also received a call from a friend advising her that they overheard Lord at a bar saying "someone was going to die tonight." She informed the State Police and specifically asked them for protection which they declined to provide despite the fact that their voicemail incited the violence. Later that same night Lord found Irish, entered the home in which she was staying, shot her son and her mother and abducted Irish. Lord later got into a shootout with the Maine State Police and fatally shot another person in the process.

Irish brought suit against the investigating officers and the State, alleging violations of the rights guaranteed to her by the substantive due process clause of the Fourteenth Amendment to the United States Constitution. This court entered a dismissal order on the defendants' motion to dismiss.

The First Circuit vacated the order and permitted the case to proceed to discovery to determine whether the State Police created the danger by calling Lord and leaving a voicemail against Irish's protests. The Court specifically instructed that discovery was to focus on whether the State Police policies for investigations permitted such conduct in investigations. If the call was in line with policy, the Court suggested that dismissal at the summary judgment stage would still be appropriate, despite the gruesome facts of the case.  In *Irish*, there were some facts which touched upon the "State's" role in the creation of the danger and questions about whether those affirmative acts led to Lord's burning of Irish's family barn, shooting of Irish's son and mother, and abduction of Irish. Irish had also specifically requested police protection because of the danger and specifically explained that the danger was caused by the voicemail which she begged them not to leave in the first instance. The distinctions between the facts of *Irish* and this case are obvious.

In that case, the police had far more specific facts of violence upon which to take police action against Lord than Officers Dexter and Wolterbeek had against Mr. Pak. Lord was a registered sex offender; he had abducted, strangled and raped Irish. Irish had a PFA against Lord. All of these facts were known to the officers *before* they were advised not to contact Lord because of the risk of violence. They did so anyways.

Thereafter, they were advised of the arson and Lord's specific threats that "someone was going to die." Lord not only had a criminal history but he had a violent history with this particular victim and the victim had specifically advised the troopers not to contact Lord because of his penchant for violence. It was *after* all of the above that Irish specifically requested protection which was not provided. Still, this court dismissed the case. The First Circuit reversed the dismissal and remanded with very specific directives for discovery.

The First Circuit's remand order specifically directed for discovery to proceed to determine whether there was a departure from police procedure. The First Circuit stated that the case was more appropriately decided at summary judgment given the open questions on that limited issue.

Here, there can be no question that Officers Dexter and Wolterbeek did not create the danger, and they did not exacerbate the danger as the troopers did in <u>Irish</u>. Ms. Johnson, Mr. Thompson and Ms. Welch each specifically stated that they did not feel threatened which is in contrast with the specific request for protection in Irish. The only facts in common between the two cases are the tragic loss of life caused by the deplorable criminal acts of a third party.[2]

This Court and the First Circuit in *Irish* follow a very distinct line of United States Supreme Court cases that have uniformly held that the state must do something to create the danger or exacerbate the danger that previously existed in order to survive a dispositive motion on such a

---

[2] Summary judgment motions have been filed but not yet decided in the remanded matter which is captioned *Irish v. Fowler*, 1:15-cv-00503-JAW.

substantive due process claim.  See e.g. *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)(failure to enforce a state issued restraining order not actionable even though the RO contained language mandating police enforcement; resulting in children's murders); *Deshaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189 (1989)(protective services agents not responsible for failing to intervene to protect the child against the known violent father; child beaten to point he was deemed to be profoundly retarded); *Rivera v. Rhode Island*, 402 F.3d 27 (1st Cir. 2005)(state not liable for failing to protect a witness who they subpoenaed in a murder trial even though officials promised protection; girl subsequently murdered to silence her testimony).  No such affirmative acts exist in this case. The facts of this case show that the state-created danger theory does not apply.

Even if the state-created danger theory were applicable, to be successful in a claim under 42 U.S.C. § 1983, a plaintiff would also have to prove: "the state actions must shock the conscience of the court." *Irish*, 849 F.3d at 526 *quoting Rivera*, 402 F.3d at 35.

Mr. Thompson and Ms. Welch are deceased.  Ms. Johnson was brutally shot and emotionally traumatized.  No child (B.L.) should suffer the emotional pain inflicted by Mr. Pak's horrendous acts.  They suffer sadly because of the criminal acts of James Pak, a man in his mid-seventies at the time with no known history of violence.  His acts were unconscionable.

Officer Edward Dexter and Officer Jacob Wolterbeek were doing their jobs.  Their discretionary decisions in the circumstances were not conscious shocking.  They were decisions which are questioned only in the clear and unfortunate hindsight of this case.  Edward Dexter and Jacob Wolterbeek did not set out to violate Ms. Johnson, Mr. Thompson, and Ms. Welch's substantive due process rights; they simply did not.  And, Edward Dexter and Jacob Wolterbeek did not engage in unconstitutional misconduct.

Police officers must make discretionary decisions over the course of their careers which have implications in the lives of others.  Where an officer makes such a decision with the intent to violate

a citizen's constitutional rights, he or she is rightly implicated in the violation. There is intent in such a violation. There is an affirmative act in such a violation. There is an injury caused specifically by that officers intended affirmative act. Such statements do not aptly describe the actions or decisions made by Officer Dexter or Officer Wolterbeek on December 29, 2012. Here, there was no violation of rights guaranteed by the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

### C. Officers Dexter And Wolterbeek And Chief Beaupre Are Entitled To Qualified Immunity Which Applies To Counts I-IV Of The Johnson Complaint and Counts I-IV And VI[3] Of The Welch Complaint

For the reasons discussed herein, the facts of this case do not make out a violation of a constitutional right. However, the qualified immunity doctrine provides protection to individuals such as Officers Dexter and Wolterbeek and Chief Beaupre even if there were constitutional violations so long as the violations were not of clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Pearson v. Callahan*, 555 U.S. 223, 234 (2009).

For the reasons discussed in Sections IV.B and IV.C above, at the time of the incident, it was clearly established that there was no private right to police protection. Whether or not the state-created danger doctrine applied in the State of Maine or the Federal District of Maine was not clearly established yet, but the cases discussing the development of the doctrine prior to the date of this incident (*DeShaney, Castle Rock, Rivera*) all established the requisite proof of some affirmative causal act or guarantee of state protection. Cases decided after the date of the incident (*Irish*) make clear the requirement that the officers must have done something affirmative to create the danger in order for it to be said that their actions were intentional constitutional violations.

---

[3] Qualified immunity is available to governmental employees or actors for claims brought pursuant to the Maine Civil Rights Act. *Clifford v. Maine Gen. Med. Ctr.*, 91 A.3d 567, 570 (Me. 2014)

The Supreme Judicial Court of Maine has taken the same view on a similar set of facts as the First Circuit. See *Webb v. Haas*, 728 A.2d 1261 (Me. 1999). In *Webb,* a Maine State Trooper drove past the victim's freshly abandoned vehicle; a witness saw the victim at her vehicle at 11:20p.m., 10 minutes before the officer came upon it on the side of a highway. The officer did not stop or investigate. It was later discovered that the victim's vehicle was abandoned on the side of a highway because she was abducted and murdered. Her body was discovered in New Hampshire. The trooper was questioned on when he first saw the vehicle and he lied and said 2:00a.m. That trooper became a suspect in the murder investigation. It was only after he became a suspect that he admitted his lie and that he had driven past the vehicle at 11:30p.m.

The estate brought suit alleging that the officer's misconduct in failing to investigate and subsequent lying deprived the decedent of the benefit of an adequate police response, which may have saved her life. There, the plaintiff alleged due process violations as well as violations of state law, arguing that the decedent could have been found and saved but for the multiple instances of misconduct. Despite the officers admitted malfeasance and untruthfulness, the SJC held there was not sufficient evidence from which a juror could reasonably infer that the trooper's acts and omissions were a substantial factor in the victim's death.

The state of the law in Maine and in the Federal District of Maine contrasts drastically with both Plaintiffs' claims against the individual defendants in this case. The clearly established law was that decisions to arrest are discretionary and in order for the state-created danger doctrine to apply, the officer must have made an affirmative act which created or exacerbated the danger resulting in the constitutional deprivation. The officers' actions complied with the state of the law. Thus, qualified immunity applies.

### D.   Officers Dexter And Wolterbeek Were Properly Trained And Supervised By Chief Beaupre And The City Of Biddeford, And The Plaintiff Has Otherwise Failed To Support Their Monell Claims

The *Monell* claim against Chief Beaupre and the City of Biddeford fails at the outset for the fact that neither Officer Dexter nor Officer Wolterbeek engaged in an underlying constitutional violation.

The *Monell* claim also fails because the record has revealed that the officers of the Biddeford Police Department, including Officers Dexter and Wolterbeek, were properly trained and supervised.  The officers received specific training prior to the incident on dealing with emotionally disturbed individuals.  They were taught key strategies in dealing with emotionally disturbed individuals in these trainings.  The officers received trainings on how to handle landlord-tenant disputes.  The Biddeford Police Department had policies and procedures in place directing officers in the performance of their duties to ensure proper training regarding the proper handling of such situations.  There is nothing in the record which would indicate that the City of Biddeford or Chief Beaupre established a policy or custom which caused the Plaintiffs' injuries.  Wherefore, Chief Beaupre and the City of Biddeford are entitled to summary judgment.

### E.   The Plaintiffs' Intentional Infliction Of Emotional Distress Claims,[4] Negligent Infliction Of Emotional Distress Claims,[5] And Negligence Claims[6] Fail As A Matter Of Law

This series of claims (NIED, IIED, Negligence) has been attempted before under similar circumstances and have failed.  See *Webb v. Haas*, 728 A.2d 1261, 1267 (Me. 1999).  In *Webb,* the parents of the decedent alleged that a state trooper was liable to them under state law for (1) the

---

[4] Counts VII, X, and XII of the Johnson Complaint; the Welch Complaint does not contain an Intentional Infliction of Emotional Distress claim.
[5] Counts VIII, XI, and XIII of the Johnson Complaint; the Welch Complaint does not contain a Negligent Infliction of Emotional Distress claim.
[6] Count VIII of the Welch Complaint.

wrongful death of their daughter pursuant to 18-A § 2-804(a) (1998) and (2) for their severe emotional distress caused by his allegedly negligent and intentional acts. An essential element of all such claims is proximate cause. See 18-A § 2-804 (wrongful death); *Champagne v. Mid-Maine Medical Ctr.*, 1998 ME 87, P 10, 711 A.2d 842, 845 (negligent infliction of emotional distress).

Proximate cause is "'that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred.'" *Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206 (Me. 1997) (quoting *Wing v. Morse*, 300 A.2d 491, 495 (Me. 1973)). In light of this definition, the Maine Supreme Court has stated that a negligent act is the proximate cause of an injury only if "the actor's conduct is a substantial factor in bringing about the harm." *Clement v. United States*, 980 F.2d 48, 53 (1st Cir. 1992) (quoting *Wing*, 300 A.2d at 495-96). Proximate cause is generally a question of fact for the jury. *Perron v. Peterson*, 593 A.2d 1057, 1058 (Me. 1991). However, "the mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Champagne*, 1998 ME 87, P 10, 711 A.2d 842, 845 (quoting RESTATEMENT (SECOND) OF TORTS § 433B cmt. a, at 442 (1965)).

On this framework, the Maine Supreme Judicial Court found the evidence insufficient from which a juror could reasonably infer that Haas's acts or omissions as a Maine State Trooper were a substantial factor in Pamela Webb's death. *Webb*, 728 A.2d at 1268.

This framework is equally applicable to the facts of the case at hand. These cases, which are all born out of tragedies and which cause one to question whether something could have been done to change the course of events, make clear that the state of the law is not to hold police officers liable for the heinous actions of third parties on a failure to protect theory unless the officer did something to cause or exacerbate the danger to the victim.

22

Wherefore, Counts VII, VIII, X-XIII of the Johnson Complaint and Count VIII of the Welch Complaint fail as a matter of law.

### F. Sovereign Immunity Applies To The Plaintiffs' Intentional Infliction Of Emotional Distress Claims, Negligent Infliction Of Emotional Distress Claims, And Negligence Claims

"Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." 14 M.R.S. § 8111(1) (2016).

The Maine Law Court has used the following four-factor test to determine whether discretionary function immunity applies:

(1)    Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?

(2)    Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective?

(3)    Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4)    Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928. For purposes of state immunity law, a police officer's decision to arrest an individual is a discretionary act. *Fortin v. Titcomb*, 60 A.3d 765, 773 (Me. 2013). Maine law provides immunity to a police officer unless the officer's conduct was so egregious that it clearly exceeded the scope of any discretion an officer could have possessed in his or her

capacity as a police officer.  *Id.*  Also, if a police officer's conduct exceeds the scope of his discretion, he may lose the immunity. See *Polley v. Atwell*, 581 A.2d 410, 413-14 (Me. 1990).

The decision to arrest is a core discretionary function of a municipal police officer by statute in Maine.   See Me. Rev. Stat. tit. 30-A, § 2671; See also *Moore v. Lewiston*, 596 A.2d 612, 618 (Me. 1991).  Thus, Officers Dexter and Wolterbeek are immune from liability as it relates to Counts VII, VIII, X-XIII of the Johnson Complaint and Count VIII of the Welch Complaint.

### G.  Ms. Johnson's Assault And Battery Claim Must Be Dismissed

Ms. Johnson alleges in Count IX of the Johnson Complaint that "Defendants' aforementioned actions and/or omissions caused Plaintiff Susan Johnson to sustain injuries from her gunshot wounds."  (Compl. at ¶ 74).

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement of the Law, Second, Torts, § 13 (1965). The Law Court uses the term assault and battery idiomatically to refer to a consummated battery. Simmons, Zillman and Gregory, Maine Tort Law, § 1.04 at 7 (1999); *Borlawsky v. Town of Windham*, 2044 Me. Super. LEXIS 125 (Me. Super. Ct. Mar. 26, 2004).

This claim is without merit.

### H.  5 M.R.S.A. § 4682 Is Inapplicable To The Facts Of This Case And Ms. Welch's Count VI Must Be Dismissed

The record of this case shows that neither Officer Dexter nor Officer Wolterbeek used physical force or threatened physical force or violence.  On this basis alone, the Maine Civil Rights Act claim brought in Count VI of the Welch Complaint must be dismissed.

## V.   __CONCLUSION__

WHEREFORE, the Defendants, the City of Biddeford, Roger Beaupre, Edward Dexter, and Jacob Wolterbeek, most respectfully request that this Honorable Court grant them summary judgment on all counts of the Johnson Complaint and the Welch Complaint.

Respectfully submitted,
Defendants, City of Biddeford, Biddeford
Police Department, Roger P. Beaupre,
Edward Dexter and Jacob Wolterbeek,
By their attorney,


  _/s/ Douglas I. Louison_
Douglas I. Louison (BBO# 008288)
dlouison@lccplaw.com
Joseph A. Padolsky (BBO# 006251)
jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street, 4th Floor
Boston, MA 02110
(617) 439-0305


Dated: June 19, 2019

### CERTIFICATE OF SERVICE

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as listed below:

/s/ Douglas I. Louison
Douglas I. Louison

Dated: June 19, 2019


### CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Undersigned counsel hereby certifies pursuant to Local Rule 7.1(A)(2) that counsel conferred in good faith with counsel for the plaintiff in an effort to resolve and/or narrow the issues related to the above captioned motion.

/s/ Douglas I. Louison
Douglas I. Louison

Dated: June 19, 2019