## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### Civil Action No. 17-cv-00264-JDL

SUSAN JOHNSON, individually and on behalf
of her minor son B.L., and on behalf of
DERRICK THOMPSON, deceased,
    Plaintiff

v.

CITY OF BIDDEFORD, BIDDEFORD
POLICE DEPARTMENT, a Municipal
Corporation organized and existing under the
laws of the State of Maine; MAINE
DEPARTMENT OF PUBLIC SAFETY, a state
agency organized under the laws of the State of
Maine; JOHN E. MORRIS, individually and as
the Commissioner of the Maine Department of
Public Safety; ROGER BEAUPRE, individually
and as Chief of Biddeford Police Department;
EDWARD DEXTER, individually and as an
employee of the Biddeford Police Department;
JACOB WOLTERBEEK, individually and as an
employee of the Biddeford Police Department
and JANE DOE,
    Defendants

## DEFENDENTS, RULE 56 STATEMENTS OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

Pursuant to Local Rules 7 and 56, and the Rule 56(h) scheduling order, Defendants, City of Biddeford, Biddeford Police Department, Roger Beaupre, Edward Dexter, Jacob Wolterbeek and Jane Doe, submit these statements of undisputed material facts in support of their motion for summary judgment.

1.    Susan Stevens was formally known as Susan Johnson and is the same Susan Johnson referred to throughout this case and within supporting exhibits. *Depo. Susan Stevens, pg. 4-5, line 18-25, line 1-13.*

2.      Susan Johnson and Derrick Thompson had a lease agreement with James and Armit Pak to reside at 17A Sokokis Rd, Biddeford ME 04005. *Depo. Susan Stevens, pg. 27-28, line 15-25, line 1-3.*

3.      17A Sokokis Rd, Biddeford ME 04005 is an attached apartment to the residential home located at 17 Sokokis Rd, Biddeford ME 04005. *Depo. Susan Stevens, pg. 45-46, Exhibit 1.*

4.      On the evening of December 29, 2012, James Pak began arguing with Derrick Thompson outside 17A Sokokis Rd, Biddeford ME 04005. *Depo. Susan Stevens, pg. 41-42, lines 6-25, lines 1-21.*

5.      Susan Johnson recorded using her cellphone portions of James Pak's behavior outside with Derrick Thompson on December 29, 2012. *Depo. Susan Stevens, pg. 42, line 19, pg 43-44, line 25, line 1-10.*

6.      Susan Johnson told Derrick Thompson to call the police after James Pak made hand motions in the shape of a gun. *Depo. Susan Stevens, pg. 44, lines 10-13.*

7.      Derrick Thompson called the Biddeford Police Department and told dispatch that his landlord was freaking out on him, making death threats towards him, and pointing his finger towards him like it was a gun. *Derrick Thompson 911 Call, December 29, 2012, 6.07.02pm*; *See also Depo. Susan Stevens, pg. 48-49, lines 16-25, line 1.*

8.      After the call to police, Susan Johnson, Derrick Thompson, and Alivia Welch waited inside their apartment for the police to arrive. *Depo. Susan Stevens, pg. 49, lines 2-14.*

9.      Officer Edward Dexter was dispatched to 17 Sokokis Road, Biddeford ME 04005 on December 29, 2012 for the call regarding a landlord/tenant issue made by Derrick

Thompson. *Depo. Edward Dexter, July 23, 2018, pg. 10-11, line 25, 1-9; Depo. Susan Stevens, pg. 49, lines 15-23.*

10.    Officer Dexter had no prior contact with the residents at 17 Sokokis Rd. before December 29, 2012. *Depo. Edward Dexter, March 1, 2019, pg. 38, line 13-16.*

11.    The initial dispatch call to Officer Dexter described the incident as a complaint about threatening, and dispatch updated Office Dexter that it possibly was only a landlord/tenant civil issue. *Depo. Edward Dexter, July 23, 2018, pg. 55, line 7-21; pg. 56-57, line 24-25, 1-3.*

12.    Officer Wolterbeek also responded to 17 Sokokis Road, Biddeford ME 04005 on December 29, 2012 for the call made by Derrick Thompson. *Depo. Jacob Wolterbeek, July 23, 2018, pg. 6, line 4-5; Depo. Susan Stevens, pg. 49, lines 15-23.*

13.    On route to 17 Sokokis Rd, Office Wolterbeek asked dispatch if there was further knowledge about weapons or proximity of weapons outside the residence. Dispatch replied that caller did not see any weapons. *Affidavit of Deputy Chief Frost, Exhibit A Biddeford Police Traffic Recordings, December 29, 2012 6.09.01pm to 6.50.50p.*

14.    Upon arrival at 17 Sokokis Rd., Officer Dexter entered the apartment, 17A Sokokis Rd., and began talking with Susan Johnson, Derrick Thompson, and Alivia Welch. *Depo. Susan Stevens, pg. 49, lines 24-25; Depo. Edward Dexter, July 23, 2018, pg. 11, line 10-21, pg. 14, line 3-8.*

15.    Officer Wolterbeek arrived after Officer Dexter. Officer Dexter was already on the scene within 17A Sokokis Road when Officer Wolterbeek arrived. *Depo. Jacob Wolterbeek, July 23, 2018, pg. 6, line 12-13; Depo. Susan Stevens, pg. 49, lines 15-23.*

16.     All interactions with the people at 17 Sokokis Road would have been captured by Officer Dexter's WatchGuard audio recording system. *Depo. Edward Dexter, July 23, 2018, pg. 21-22, line 25, 1-3; Depo. Susan Stevens, pg. 52, line 5-7.*

17.     The WatchGuard recording is an accurate representation of the interactions at 17 Sokokis Rd. on December 29, 2012. *Depo. Edward Dexter, July 23, 2018, pg. 36, line 9-14.*

18.     The WatchGuard recordings accurately depict what was said by whom and when and is the best evidence for determining these facts for the day in question. *Depo. Edward Dexter, March 1, 2019, pg. 47, 22-24.*

19.     Upon arrival at 17 Sokokis Rd, Officer Dexter and Derrick Thompson had the following conversation:

>       Officer Dexter: "You call?"
>
>       Derrick Thompson: "Yeah."
>
>       Officer Dexter: "What's going on?"
>
>       Derrick Thompson: "Um, I was out here shoveling the walkway and he come out screaming at me. Started going off and—if you want you can come in—started screaming at me and got right in my face and she came to the door and he went to the door and said he wanted to talk to her not me and, then she said something, he told her to shut her mouth, and then he got directly in my face and said, "Hit me" and I said "I'm not hitting you I'm not going to jail for this. And—"
>
>       Officer Dexter: "Ok."
>
>       Derrick Thompson: "Then—"
>
>       Officer Dexter: "What was this all over? Why was he screaming at you?"

Derrick Thompson: "Because of the car in the driveway."

*E. Dexter WatchGuard Video/Audio, 2:25 – 2:57 time marks.*

20. Officer Dexter was shown the cellphone videos taken by Susan Johnson of James Pak's interactions with them that day leading to the 911 call. *Depo. Edward Dexter, July 23, 2018, pg. 58, line 1-4. See also E. Dexter WatchGuard Video/Audio, 3:23 – 5:10 time marks.*

21. The cellphone videos shown to Officer Dexter depicted Mr. Pak on his steps yelling with Derrick. Mr. Pak was pretty vulgar and appeared agitated. Mr. Pak grabbed his crotch and made reference to something sexual about Derrick. *Depo. Edward Dexter, July 23, 2018, pg. 58, line 5-16. See also E. Dexter WatchGuard Video/Audio, 3:23-5:10 time marks.*

22. The following conversation happened while Officer Dexter was being shown the cellphone recordings:

Derrick Thompson: "She thought she was recording—"

Susan Johnson: "I thought it was recording when he threatened me."

Officer Dexter: "Ok"

Derrick Thompson: "He points his fingers at me and goes "Bang" and then—"

Susan Johnson: "—And does the same thing to me—"

Derrick Thompson: "—points his finger at her and goes "Bang.""

*E. Dexter WatchGuard Video/Audio, 5:10-5:20 time marks. See also Depo. Edward Dexter, July 23, 2018, pg. 59-60, line 23-25, 1-11.*

23. After viewing the cellphone recordings and asking basic identifying personal information, the following conversation happened:

> Officer Dexter: "Have you had these problems before?"
>
> Derrick Thompson: "Yea—"
>
> Susan Johnson: "—I have not had any confrontation like this with him because I'm never home—"

*E. Dexter WatchGuard Video/Audio, 8:13 – 8:22 time marks.*

24. Upon arrival, Officer Wolterbeek spoke briefly with James Pak in the driveway, and then Officer Wolterbeek went into the attached apartment residence to meet with Officer Dexter. *Depo. Jacob Wolterbeek, July 23, 2018, pg. 6, line 12-21.*

25. Before entering the attached apartment and joining Officer Dexter, Officer Wolterbeek encountered James Pak on the driveway and Mr. Pak made statements to Officer Wolterbeek. Officer Wolterbeek found nothing in them to be of any threatening or criminal nature. *Depo. Jacob Wolterbeek, July 23, 2018, pg. 6, line 12-21.*

26. Officer Wolterbeek joined Officer Dexter in the apartment residence and listened in on the conversation already ongoing. *Depo. Jacob Wolterbeek, July 23, 2018, pg. 7-8, line 23-25, 1-9.*

27. The following conversation happened as Officer Wolterbeek joined the conversation by entering the apartment:

> Officer Dexter: "Ok, at any time did you actually feel threatened?"
>
> Derrick Thompson: "Not that—well, not really I mean—."
>
> Officer Dexter: "—Ok—"
>
> Derrick Thompson: "—But—"
>
> Officer Dexter: "—obviously more harassed?"
>
> Derrick Thompson: "Yea."

Officer Dexter: "Ok."

*E. Dexter WatchGuard Video/Audio, 8:49-9:00 time marks.*

28.     The following conversation happened between the parties while Officer Wolterbeek is in the apartment:

Officer Dexter: "What is [Mr. Pak's] biggest issue do you think?"

Derrick Thompson: "The car in the driveway. The Honda"

*E. Dexter WatchGuard Video/Audio, 9:00- 9:07 time marks.*

29.     The following conversation happens between the parties while Officer Wolterbeek is in the apartment:

Officer Dexter: "What does your rental agreement say?"

Susan Johnson: "That there can be two vehicles, that we have two parking spots except for visitors and that we have this side of the driveway and then the turnaround for visitors and if we need additional then out back."

Officer Dexter: "Ok. So you're allowed more than—"

Susan Johnson: "Uh-huh"

Officer Dexter: "—two spots? Ok. The issue that you are having is a civil issue between you and him. However, obviously he's not allowed to cause harassment, threaten, et cetera, et cetera, et cetera. Um, and we can, um, obviously speak to him and see what he has to say about this whole-"

Susan Johnson: "His wife's not home. I think that's the issue. She works like—"

> Alivia Welch: "Because she always comes and apologizes to us after he freaks out. She says, "Sorry he just gets worked up. I don't know what to do about it.""

*E. Dexter WatchGuard Video/Audio, 9:07- 9:56 time marks.*

30.    The following conversation happens between the parties while Officer Wolterbeek is in the apartment:

> Officer Dexter: "Is [Mr. Pak] always like that?"
>
> Susan Johnson: "Yeah"
>
> Derrick Thompson: "Yeah"
>
> Alivia Welch: "He never talks normal. It's always yelling."

*E. Dexter WatchGuard Video/Audio, 11:27- 11:34 time marks.*

31.    The following conversation happened between Derrick Thompson, Susan Johnson, Alivia Welch, and Officer Dexter with Officer Wolterbeek present:

> Officer Dexter: "Do you have any questions?"
>
> Derrick Thompson: "No"
>
> Susan Johnson: "No"
>
> Alivia Welch: "No"
>
> Officer Dexter: "Ok. I'll come back in after I to him."

*E. Dexter WatchGuard Video/Audio, 13:40- 13:46 time marks.*

32.    Officer Dexter interpreted Derrick Thompson's overall demeanor on December 29, 2012 as annoyed. *Depo. Edward Dexter, July 23, 2018, pg. 60, line 16-25.*

33.    Officer Dexter asked Derrick Thompson if Derrick felt threatened by Mr. Pak's behavior. *Depo. Edward Dexter, July 23, 2018, pg. 61, line 23-25.*

34.     Derrick Thompson reported to Officer Dexter that he did not feel threatened during the December 29, 2012 incident. *Depo. Edward Dexter, July 23, 2018, pg. 62, line 11.*

35.     Susan Johnson did not indicate to Officer Dexter that she felt physically threatened by James Pak. *Depo. Susan Stevens, pg. 53, line 13-15.*

36.     Prior to December 29th, 2012, Susan Johnson never reported any threats of harm or violence by James Pak to anyone. *Depo. Susan Stevens, pg. 37-38, line 25, 1-3.*

37.     Prior to December 29th, 2012, Susan Johnson never reported any threats of harm or violence by Armit Pak to anyone. *Depo. Susan Stevens, pg. 37-38, line 25, 1-3.*

38.     Prior to December 29th, 2012, Susan Johnson was unaware of any threats of violence or threats of harm directed at her and made by James Pak. *Depo. Susan Stevens, pg. 37, line 14-24.*

39.     Officer Dexter went and talked with James and Armit Pak after talking with Susan Johnson, Derrick Thompson, and Alivia Welch. *Depo. Susan Stevens, pg. 50, lines 15-21; See also Depo. Edward Dexter, July 23, 2018, pg. 11, line 10-21, pg. 14, line 3-8.*

40.     Upon entering the residence of James and Armit Pak, the following conversation occurred:

> Officer Dexter: "What's going on?"
>
> Armit Pak: "They've broken their lease. They continually ignore. We were supposed to have a meeting this morning and like all three of them left, they all left."
>
> Officer Dexter: "Yup"
>
> Armit Pak: "Um my husband is angry with them. He's—"
>
> Officer Dexter: "Yup"

Armit Pak: "—gone in and told them to get the car out of the yard. Um the girl has moved in without permission."

Officer Dexter: "Mm-kay"

Armit Pak: "The car is here always in the yard when Jim tries to plow—"

Officer Dexter: "Yeah"

Armit Pak: "—they're in the way."

Officer Dexter: "Ok"

Armit Pak: "He can't plow the yard.

Officer Dexter: "Mm-mm"

Armit Pak: "We couldn't get in the yard—"

Officer Dexter: "Mm-kay"

Armit Pak: "—yesterday."

Officer Dexter: "Ok"

Armit Pak: "So it's mostly just them taking advantage—"

Officer Dexter: "The issues with the snow and the cars?"

Armit Pak: "No the issue is bigger."

*E. Dexter WatchGuard Video/Audio, 15:05- 15:52 time marks.*

41.     The following conversation happened after Armit Pak told Officer Dexter that she served an eviction notice and wanted the tenants out of the apartment:

Officer Dexter: "As landlords, you familiar with the whole eviction process and that—?"

Armit Pak: "Not really, but we're learning."

Officer Dexter: "Ok. That that's a civil issue between you guys—"

Armit Pak: "—I know it is—"

Officer Dexter: "—and there's nothing that we can do about that."

Armit Pak: "I know it."

Officer Dexter: "Now, about the issue tonight about, between you and them, yelling. Okay. I understand you're—"

Armit Pak: "—it's frustrating—"

Officer Dexter: "—I, uh, and, you know what I understand that"

Armit Pak: "yeah"

Officer Dexter: "I do understand that. Especially when you get a storm like this you just want to clean the yard."

*E. Dexter WatchGuard Video/Audio, 16:39- 17:06 time marks.*

42.    The following conversation happened between James Pak and Officer Dexter with Armit Pak also in the room:

James Pak: "He gives me the finger. Comes right in there and I go I would shoot you."

Officer Dexter: "Yeah but you can't tell him that. You can't threaten him that way."

James Pak: "Ok why he threaten me like this when—"

Officer Dexter: "—That, that's, that's just him being rude. That's just, that's just him being rude. Ok. I understand that it upsets you. I do. I can see that it upsets you. And I can see that it's disrespectful to you. And I see that and I understand that. Ok. But you can't threaten to physically

hurt him, you can't physically, you can't threaten to shoot him. You can't do those things—"

James Pak: "—I know—"

Officer Dexter: "—because—"

James Pak: "I'm not going shoot him."

*E. Dexter WatchGuard Video/Audio, 17:48- 18:29 time marks.*

43.    The following conversation happened between James Pak and Officer Dexter and Armit Pak:

James Pak: "They ain't got a right to three. Only two car. They have three. Now you say civil, they have right to any car they want?"

Officer Dexter: "That's an agreement between you and them."

James Pak: "I told them not to park we've been telling you that."

Officer Dexter: "Ok and I understand what your side is. I understand that you said they only have two. They, now what they were telling me was that they have two plus if they have visitors they can park on side or over there. Ok."

Armit Pak: "They're not supposed to have visitors every day."

Officer Dexter: "Ok. Either way, that is a civil agreement between you and them—"

Armit Pak: "—I know."

Officer Dexter: "—The bottom line is that you cannot threaten them. If they're outside shoveling, leave them alone. Do it through the courts. That's your best bet is to do it through the courts."

*E. Dexter WatchGuard Video/Audio, 20:29 - 21:19 time marks.*

44.     The following conversation happened between James Pak and Officer Dexter and Armit Pak:

> Officer Dexter: "What I suggest tonight is—"
>
> Armit Pak: "—Stay in the house."
>
> Officer Dexter: "Yea. Let. If you want to go out and shovel do it when they're not there. Ok?"
>
> Armit Pak: "Thank you."
>
> James Pak: "What you mean I can shovel?"
>
> Officer Dexter: "You can shovel. Do it while they're inside. Ok. If they want to come outside, don't say anything to them. Just ignore them. Put the blinders on. Do your thing. Let them do their thing. It's frustrating I understand that and that's the downside of being a landlord here. I wish I could give you more, of, of a guidance or anything but once you enter into a lease agreement it all becomes a civil issue so you have to go through the eviction process if that's what you want to do.
>
> James Pak: "I ain't got nothing to lose. I came from orphanage—"
>
> Officer Dexter: "You do have a lot to lose, sir. You have this house; you have your wife; you have your dog; you have your vehicles. You don't want any of that—"
>
> James Pak: "—I've got nothing to lose."
>
> Officer Dexter: "Yea, well, but you do. So keep that in mind. You have a lot to lose. You don't wanna, you don't wanna have to deal with that. Just

ignore them. Don't let it get to you. Ok. You have, you have faced bigger adversities than this and you have conquered them. Don't let this, don't let this bother you. Just go your path"

*E. Dexter WatchGuard Video/Audio, 24:11 - 25:35 time marks.*

45.  The following conversation happened between James Pak and Officer Dexter and Armit Pak:

> James Pak: "He called me jap he called me names and now I just don't, I don't have any rights?"
>
> Armit Pak: "Jim, you have to stop it"
>
> Officer Dexter: "It's very frustrating I understand that."
>
> Armit Pak: "Thank you."
>
> Officer Dexter: "I'm sorry ma'am I wish I had more answers for you."
>
> James Pak: "You're going to see me in the newspaper."
>
> Officer Dexter: "No I don't wanna see you in the newspaper."

*E. Dexter WatchGuard Video/Audio, 25:45 - 26:02 time marks.*

46.  While leaving the Pak house, Officer Dexter has these final words with James Pak:

> Officer Dexter: "You keep your distance from them."
>
> James Pak: "No, no you don't have to worry about that."
>
> Officer Dexter: "Ok. Keep your distance from them. I'm gonna tell them to keep their distance from you."

*E. Dexter WatchGuard Video/Audio, 27:52- 28:01 time mark.*

47.  Officer Dexter returns to Susan Johnson, Dexter Thompson, and Alivia Welch and had the following conversation:

Officer Dexter: "Keep your distance from him. They're gonna try and keep— I explained to them, whether he does—"

Susan Johnson: "—is he alone?"

Officer Dexter: "No she's there. Ok, I explained to them that this is a civil issue. He's obviously extremely upset about the second car and whatnot. Ok? Use caution. You're out there shoveling, he comes out, come inside. I think at this point in time trying to get him to understand what's happening and the issues of civil issue between you guys is um is gonna be hard pressed and you guys are gonna have more than one conflict unfortunately."

Susan Johnson: "He doesn't listen. He doesn't understand."

Officer Dexter: "So, and there's not much I can do about it because it is a civil issue. So whether you guys are going through the eviction process, the lease disagreement, whatever process that you guys are going through I can't do much about that."

Susan Johnson: "Right."

Officer Dexter: "Ok. But, I can do things about the harassment et cetera the threatening."

Susan Johnson: "Are you going back in there at all?"

Officer Dexter: "No I'm done talking with them."

*E. Dexter WatchGuard Video/Audio, 28:18- 29:30 time mark.*

48.    Officer Dexter, Susan Johnson, Dexter Thompson, and Alivia Welch continue talking and have the following exchange:

> Officer Dexter: "Do you have any questions? I advised him he can't harass you, he can't threaten you. Whether it was successful or not I don't know."
>
> Derrick Thompson: "I'll find out soon enough."
>
> Officer Dexter: "Well, just keep your distance."

*E. Dexter WatchGuard Video/Audio, 30:15- 30:27 time mark.*

49.   Officer Dexter, Susan Johnson, Dexter Thompson, and Alivia Welch continue talking and have the following exchange:

> Officer Dexter: "Good luck."
>
> Susan Johnson: "Thank you"
>
> Derrick Thompson: "Thank you"
>
> Officer Dexter: "Stay in for the night."
>
> Susan Johnson: "Was he acting calm while you were over there?"
>
> Officer Dexter: "Umm, I wouldn't say. Calm is not the best word."
>
> Susan Johnson: "Because I thought like I wonder if he's going to be normal."
>
> Officer Dexter: "She's, she's there too.
>
> Susan Johnson: "Ok"
>
> Officer Dexter: "But they're frustrated. They're frustrated because – they are hung up on the two car thing."

*E. Dexter WatchGuard Video/Audio, 31:18- 31:45 time mark.*

50.   Officer Dexter left and cleared the scene after speaking with Susan Johnson, Derrick Thompson and Alivia Welch. *Depo. Edward Dexter, July 23, 2018, pg. 27, line 19-22.*

51.	Officer Dexter encouraged the parties to stay away from each other before he left the scene that first time. *Depo. Edward Dexter, July 23, 2018, pg. 68, line 15-18.*

52.	Officer Dexter interpreted the demeanors of Ms. Johnson, Derrick, and Alivia Welch as annoyed but polite. *Depo. Edward Dexter, March 1, 2019, pg. 40-41, line 15-25, 1-8.*

53.	Officer Dexter held the belief that Mr. Pak's statements throughout the exchange were nothing more than hollow, anger. *Depo. Edward Dexter, July 23, 2018, pg. 65, line 17-18; pg. 71, line 1-16.*

54.	Susan Johnson had never seen James Pak appear intoxicated or under the influence of drugs or alcohol. *Depo. Susan Stevens, pg. 43, lines 11-14.*

55.	It never crossed Susan Johnson's mind that James Pak could have been intoxicated on December 29th, 2012. *Depo. Susan Stevens, pg. 43, lines 15-22.*

56.	Prior to December 29th, 2012, other than a call regarding the Paks' dogs being left outside in the elements, Susan Johnson never called the police for any assistance or involvement with the Paks. *Depo. Susan Stevens. Pg. 37, line 4-8.*

57.	Prior to December 29th, 2012, Susan Johnson was unaware that James Pak had a firearm. *Depo. Susan Stevens, pg. 38, line 13-18.*

58.	Officer Dexter interpreted Mr. Pak as being upset. Officer Dexter described Mr. Pak's demeanor as being calm, and then would ramp up, and then calm back down a little. *Depo. Edward Dexter, July 23, 2018, pg. 20, line 15-22.*

59.	Officer Dexter decided not to issue a summons or arrest Mr. Pak for any violation of law during the first dispatch in December 29th, 2012. *Depo. Edward Dexter, March 1, 2019, pg. 24, line 5-8.*

60.     Officer Dexter did not believe he had enough information to arrest Mr. Pak for something during the first dispatch in December 29th, 2012. *Depo. Edward Dexter, March 1, 2019, pg. 24, line 13-16.*

61.     Officer Dexter asked Susan Johnson, Derrick Thompson, and Alivia Welch if they were in fear and they communicated that they were not in fear. *Depo. Edward Dexter, March 1, 2019, pg. 30, line 15-18; Depo. Edward Dexter, July 23, 2018, pg. 20, line 7-10.*

62.     Officer Dexter instructed Mr. Pak that Mr. Pak could not make threats. *Depo. Edward Dexter, July 23, 2018, pg. 65, line 9-12.*

63.     Shortly after clearing the scene, Officer Dexter received a second call, priority, to the residence at 17 Sokokis Rd. regarding a shooting. *Depo. Edward Dexter, July 23, 2018, pg. 27, line 23-25, pg. 28, line 1-6.*

64.     Mr. Pak walked into the apartment, he took a gun out, and he shot Ms. Johnson, Derrick Thompson and Alivia Welch. *Depo. Susan Stevens. Pg. 54, line 14-25, pg. 55 line 1-2.*

65.     Officer Dexter responded and was first officer on the scene. *Depo. Edward Dexter, July 23, 2018, pg. 27, pg. 28, line 9-10.*

66.     When other officers arrived, Officer Dexter entered the back door of the residence, rescued Ms. Johnson's son, and then rescued Ms. Johnson. *Depo. Edward Dexter, July 23, 2018, pg. 27, pg. 29, line 7-10.*

67.     In 2012, Biddeford Police had Standard Operating Procedure General Order No. 129 in effect which functioned as Department policy establishing guidelines governing the use of force and control, use of conducted electronic weapons, and use of firearms by Biddeford Police Officers, and to describe permitted and prohibited practices, requirements for medical aid, reporting, and review of all such incidents. *Depo. Roger*

*Beaupre, February 27, 2019, pg. 22, line 11-25, pg. 23, line 1-20. Exhibit 1; Depo. Edward Dexter, March 1, 2019, pg. 4, line 23-25, page 5, line 1-21, Exhibit 1. See also Exhibit 1 to Depo. Roger Beaupre.*

68.   In 2012, Biddeford Police had Standard Operating Procedure General Order 136-96 in effect which functioned as Department policy to describe deviant behavior and circumstances under which police personnel will make an arrest or protective detention in order to assist said person or protect the general public. *Depo. Roger Beaupre, February 27, 2019, pg. 32, line 1-15, pg. 33, line 3-6. See also Exhibit 3 to Depo. Roger Beaupre.*

69.   Under General Order 136-96, the policy states that an officer who encounters situations of deviant behavior shall exercise their discretion and that any determination that a person represents an imminent and substantial harm to themselves or someone else be based upon probable cause. *See G.O. 136-96, pg. 2 of 3, A, E, Exhibit 3 to Depo. Roger Beaupre.*

70.   In 2012, the Biddeford Police had Standard Operating Procedure General Order 02-01 in effect which functioned as Department policy to describe the written duty responsibilities of law enforcement officers within the Biddeford Police Department. *Depo. Roger Beaupre, February 27, 2019, pg. 36, line 21-25, pg. 37, line 1-25, pg. 38, line 11-13. See also Exhibit 4 to Depo. Roger Beaupre.*

71.   In 2012, the Biddeford Police had Standard Operating Procedure General Order 02-03 in effect which functioned as Department policy for the code of ethics and standards of conduct expected of law enforcement officers within the Biddeford Police Department. *Depo. Roger Beaupre, February 27, 2019, pg. 39, line 9-17. See also Exhibit 6 to Depo. Roger Beaupre.*

72. In 2012, the Biddeford Police had Standard Operating Procedure General Order 02-14 in effect which functioned as Department policy communicating expectations, guidelines, and requirements for officers assigned to the Patrol Division. *Depo. Roger Beaupre, February 27, 2019, pg. 46, line 12-14, pg. 47, line 15-16. See also Exhibit 8 to Depo. Roger Beaupre.*

73. In 2012, the Biddeford Police had Standard Operating Procedure General Order 02-15 in effect which functioned as Department policy to guide officers in how and when they can make arrests. *Depo. Roger Beaupre, February 27, 2019, pg. 50, line 19-25, pg. 47. See also Exhibit 9 to Depo. Roger Beaupre.*

74. Under Standard Operating Procedure 02-15, the policy states that in order for an officer to make an arrest without a warrant for a misdemeanor the offense must be committed in the officer's presence. *Standard Operating Procedure 02-15, pg. 2 of 9, B, 3, Exhibit 9 to Depo. Roger Beaupre.*

75. Under Standard Operating Procedure 02-15, the policy further states that in order to arrest without a warrant for a misdemeanor an officer must have personal knowledge of the facts, in other words, information obtained by direct perception through the officer's own senses. *Standard Operating Procedure 02-15, pg. 3 of 9, B, 3, Exhibit 9 to Depo. Roger Beaupre.*

76. The Maine criminal statutes for threats, terrorizing, and harassment are all misdemeanor criminal statutes. *Depo. Edward Dexter, July 23, 2018, pg. 82, line 20-24.*

77. For misdemeanor statutes, a police officer in the State of Maine has discretion to make the determination to arrest, or summons or do neither. *Depo. Edward Dexter, July 23, 2018, pg. 85, line 19-23.*

78.     Officer Dexter did not believe that the Maine criminal threatening statute applied to Mr. Pak during this incident and determined that Mr. Pak's actions did not rise to the level necessary to make an arrest. *Depo. Edward Dexter, July 23, 2018, pg. 26, line 19-23; Depo. Edward Dexter, March 1, 2019, pg. 25, line 12-14.*

79.     Officer Dexter did not believe that the Maine terrorizing statute applied to Mr. Pak during this incident and determined that Mr. Pak's actions did not rise to the level necessary to make an arrest. *Depo. Edward Dexter, July 23, 2018, pg. 26-27, line 24-25, 1-2; Depo. Edward Dexter, March 1, 2019, pg. 25, line 19-22.*

80.     Officer Dexter did not believe that the Maine disorderly conduct statue applied to Mr. Pak during this incident and determined that Mr. Pak's actions did not rise to the level necessary to arrest. *Depo. Edward Dexter, July 23, 2018, pg. 27, line 3-7.*

81.     In 2012, the Biddeford Police had Standard Operating Procedure General Order 02-16 in effect which functioned as Department policy regarding warrantless searches and seizures. *Depo. Roger Beaupre, February 27, 2019, pg. 52, line 25, pg. 53, line 1-15. See also Exhibit 11 to Depo. Roger Beaupre.*

82.     In 2012, the Biddeford Police had Standard Operating Procedure General Order 04-07 in effect which functioned as Department policy outlining and explaining the circumstances under which an officer may lawfully make a forcible entry into or onto private premises. *Depo. Roger Beaupre, February 27, 2019, pg. 53, line 19-21, page 54, line 1-20. See also Exhibit 12 to Depo. Roger Beaupre.*

83.     Officer Dexter received training in November of 2011 about how to deal with emotionally disturbed individuals. Officer Dexter has had more than just this one instance

of training regarding emotionally disturbed individuals. *Depo. Edward Dexter, March 1, 2019, pg. 33, line 18-21; pg. 34, line 2-7.*

84.     From these trainings, Officer Dexter learned key strategies in dealing with emotionally disturbed individuals are to remain calm, not agitate, and keep one's distance. *Depo. Edward Dexter, March 1, 2019, pg. 34, line 8-22.*

85.     Officer Dexter has previous law enforcement experience dealing with landlord/tenant issues. *Depo. Edward Dexter, March 1, 2019, pg. 41, line 9-13.*

86.     Officer Dexter received training as part of his law enforcement career regarding how to deal with landlord/tenant disputes. *Depo. Edward Dexter, March 1, 2019, pg. 43-44, line 24-25, 1-3.*

Respectfully submitted,

Respectfully submitted,
Defendants, City of Biddeford, Biddeford
Police Department, Roger P. Beaupre, Edward
Dexter and Jacob Wolterbeek,
By their attorney,

    */s/ Douglas I. Louison*
Douglas I. Louison (BBO# 008288)
dlouison@lccplaw.com
Joseph A. Padolsky (BBO# 006251)
jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street, 4th Floor
Boston, MA 02110
(617) 439-0305

Dated: June 19, 2019

## CERTIFICATE OF SERVICE

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as listed below:

*/s/ Douglas I. Louison*
Douglas I. Louison

Dated: June 19, 2019

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Undersigned counsel hereby certifies pursuant to Local Rule 7.1(A)(2) that counsel conferred in good faith with counsel for the plaintiff in an effort to resolve and/or narrow the issues related to the above captioned motion.

*/s/ Douglas I. Louison*
Douglas I. Louison

Dated: June 19, 2019