UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| **SUSAN JOHNSON**, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **Docket No. 17-CV-264-JDL** |
| v. | ) | |
| | ) | |
| **CITY OF BIDDEFORD et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| **JOCELYNE WELCH**, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **Docket No. 18-CV-160-JDL** |
| v. | ) | |
| | ) | |
| **CITY OF BIDDEFORD et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

### Plaintiff's Objection to Defendant's Motion for Summary Judgment

Now come Plaintiffs Susan Johnson and Jocelyne Welch and hereby jointly object to Defendants, City of Biddeford, Edward Dexter, and Jacob Wolterbeek's Motion for Summary Judgement. In support of this objection Plaintiff states as follows:

### Facts

Please See Plaintiffs' response to the Defendant's Statement of Facts. The Plaintiffs rely on their response and the additional facts asserted in the response as the basis for the following argument.

1

**Argument**

Summary judgment is properly granted if "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." F. R. Civ. P. 56(c). The facts as properly submitted and supported by record citations are taken in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986). The burden is initially placed upon the moving party to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then show that a genuine issue exists for trial. *Monge v. Cortez*, 413 F.Supp.2d 42, 45 (D. P.R. 2006)(*citing Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  This court must view the evidence and all reasonable inferences from said evidence in the favor of the non-moving party. *Caroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002).

**I.  Count I Violation of 42 U.S.C. § 1985**

42 U.S.C. § 1985 "permits suits against those who conspire to deprive others of 'the equal protection of the laws." *Soto-Padro v. Public Bldgs. Authority,* 675 F. 3d 1 (1st Cir. 2012). The elements of the complaint are:

 "(1) 'a conspiracy' (2) 'a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws' (3) 'an overt act in furtherance of the conspiracy' and, lastly (4) either (a) an 'injury to person or property' or (b) 'a deprivation of a constitutionally protected right.'" *Id.* at 4.

The Defendants argue that Plaintiffs have failed to establish the existence of a conspiracy; and that Plaintiffs have failed to establish a deprivation of a constitutionally protected right.

### 1. The Plaintiffs Have Established the Existence of a Conspiracy

Defendants request summary judgment on Plaintiffs' 42 U.S.C. § 1985 claim on the basis that the Plaintiffs have not provided evidence of a conspiracy between Officers Dexter and Wolterbeek.  The case law does not require that both parties to the conspiracy be state actors in order for the claim to survive.  James Pak made his intentions to harm the Plaintiffs clear to Officer Dexter.  By failing to arrest Pak for terrorizing Officer Dexter was complicit in Pak's actions and acted in concert with Pak in a manner such that a conspiracy between two or more parties existed.

### 2. The Plaintiffs have established a Violation of a Constitutionally Protected Right

A person's right to quiet enjoyment of her residence is considered a fundamental right. *Blackhouse v. Doe*, 24 A. 3d 72, P 37 (Me. 2011).  James Pak threatened specific harm to the plaintiffs while they were in front of and inside their residence.  Officer Dexter ignored those threats and as a result James Pak entered into the residence of Johnson and Thompson, shot and killed Thompson and Welch and grievously injured Johnson in violation of their fundamental right to quiet enjoyment of their residence.

The Defendants, citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005), argue that a private citizen does not have a right to the prosecution of and protection from another private citizen.  *Castle Rock* held that absent a provision in state law there is no constitutionally protected right to police enforcement action.  *Id.*  Defendants argue that

because in Maine a police officer's decision to arrest an individual is discretionary, *Fortin v. Titcomb*, 60 A.3d 765, 773 (Me. 2013), there can be no constitutional right held by one citizen in another citizen's arrest. *Castle Rock,* at 756. Plaintiffs argue that under the circumstances of the instant case, the decision to arrest James Pak was not discretionary, it was required.

The Biddeford Police Department has specific policies in place that require officers to act and enforce the law, as well as policies that require officers to do no harm and protect the public. The following of these policies is not discretionary. Biddeford Policy officers are expected to be aware of and follow all Department policies.

**a.) Promulgation and Enforcement of a Minimum Deviant Behavior policy was required by Statute and Therefore Plaintiffs have a protected right to enforcement of that Policy.**

Title 25 M.R.S.A §2803-B requires all law enforcement agencies to adopt written policies regarding procedures to deal with, among other things, mental illness and the process for involuntary commitment. Prior to its amendment in 2013, §2803-B, (1-C) listed "deviant behavior" as a required law enforcement policy. The Board of the Maine Criminal Justice Academy is required to review the minimum standards for each policy. Title 25 M.R.S.A §2803-C provides for a penalty for any agency or individual who fails to comply with a provision of Chapter 341 (The Maine Criminal Justice Academy). Because the statute in effect at the time required a policy to be adopted regarding response to deviant behavior, action required by this policy becomes a required enforcement action and therefore a constitutionally protected enforcement action as opposed to a discretionary action.

Biddeford Police Department General Order No. 136-96, which was in effect at the time of the incident, states that "it shall be the policy of the Biddeford Police Department to assist persons who are exhibiting symptoms of deviant behavior and appear to represent an imminent danger to themselves or to someone else." Deviant behavior is described as "behavior which creates a condition, either physical or psychological in nature, which presents a threat of imminent and substantial harm to that person or to other persons." Imminent and substantial physical harm is defined as any condition which creates a reasonably foreseeable risk of harm to someone if not prevented or precluded." The procedures outlined include the following: "whenever police encounter deviant persons who represent an imminent and substantial harm to themselves or someone else, the officer(s) shall be empowered, based upon probable cause, to take that person into protective custody []." "Supervisors are responsible for ensuring that their respective personnel have a complete and correct understanding of this general order." The policy indicates that "failure to follow this procedure may result in disciplinary action, up to and including dismissal from employment." *See DSMF ¶ 68 and Plaintiff's Statement of Material Facts (PSMF) ¶ 13* for this policy.

James Pak, through his directly observable actions was exhibiting behavior consistent with this policy. While Officer Dexter testified that he did not believe that the threats communicated by James Pak rose to the level of a criminal offense, he did not do the required analysis under the "response to deviant behavior" policy. Had he engaged in such an analysis, the policy would have dictate further protective action. As a direct result of Officer Dexter's failure to take James Pak into protective custody, James Pak was able to shoot and kill Thompson and Welch, and grievously injure Johnson.

5

**b.)  An Arrest was required by the Existing Policies and Procedures**

Even absent a requirement by statute, other policies and procedures promulgated at the time of the incident required that Officer Dexter arrest James Pak.  Standard Operating Procedure General Order 02-01 indicates that "all officers are responsible for taking prompt and proper police action concerning any violation(s) that come to their attention."  In addition it states that "while on duty officers *shall* at all times take appropriate action to protect life and property; []  preserve the peace; prevent crime; detect and arrest violators of the law; enforce Federal, State and local laws and ordinances according to Department policy; and keep his/her supervisor or the dispatcher informed of his/her location and activity."  *See DSMF ¶ 70  and (PSMF) ¶18* for this policy.   As indicated above, James Pak committed a crime in the presence of Officer Dexter and no enforcement action was taken.

SOP 02-14 states that "[t]he primary mission and function of the Patrol Division is the protection and preservation of life and property through sound and accepted police practices."  This Field operations policy defines exigent circumstances as "an emergency situation that *requires* immediate police action and that does not allow officers sufficient time to obtain a warrant."  *See DSMF ¶ 72 and PSMF ¶ 14.*

SOP 02-15, part B, codified the existing statutory authority regarding warrantless arrests.  The policy indicates that the authority to arrest without a warrant is established by 17-A M.R.S.A. § 15 and that officers are expected to know and follow that law.  Other than as specified in 17-A M.R.S.A. § 15 (1)(A) the law states that misdemeanors must be committed in

the officer's presence in order to justify an arrest without a warrant.  *See DSMF ¶75 and PSMF ¶ 15.*

SOP 02-03, the Code of Ethics, mandates that "members *shall* display an affirmative, consistent effort to observe and comply with the directives, rules, policies, procedures []."  *See DSMF ¶ 73 and PSMF ¶ 16..*

In Defendants' motion for summary judgment, Officer Dexter's actions are described as making a discretionary decision not to arrest or summons Mr. Pak for any criminal violations as he did not believe Mr. Pak to be "criminally disorderly."  "Criminally disorderly" does not have a legal definition in the Maine criminal code.  However, Dexter testified that he considered both the criminal threatening statute and the terrorizing statute and determined that neither were applicable to Mr. Pak's behavior on the night in question.  Defendants argue that it was an appropriate exercise of Officer Dexter's discretion to refrain from arresting or summonsing Mr. Pak for a violation of criminal threatening because "Ms. Johnson, Mr. Thompson, and Ms. Welch all explained they were not placed in fear."  It is important to note that Officer Dexter did not ask Ms. Johnson and Ms. Welch if they were placed in fear.  Furthermore, when Mr. Thompson was asked if was placed in fear his answer was "not really" but he was cut off by Officer Dexter before he could elaborate.  Nor did Officer Dexter make inquiry of any of the parties *after* the approximately 20 minute interaction he had with Pak in which Pak communicated a variety of threats to Officer Dexter.  Officer Dexter violated The City of Biddeford Policies and Procedures that impose a duty to investigate violations of law.

With respect to terrorizing, "a person is guilty of terrorizing if that person in fact communicates to *any* person a threat to commit or cause to be committed a crime of violence

7

dangerous to human life,  against the person to whom the communication is made *or another,* and the natural and probable consequence of such a threat, *whether or not such consequence in fact occurs*, is to place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed.  17-A M.R.S.A. § 210. (emphasis added.) Officer Dexter and Chief Beaupre testified that they did not believe terrorizing was applicable because the Plaintiffs were not afraid.  Officer Dexter's decision not to arrest Pak when Pak communicated a variety of threats about the Plaintiffs to Officer Dexter was not an act of discretion, it was a failure to understand the applicable statute and a violation of Biddeford Police Department's Policies and Procedures.  Furthermore, the "natural and probable consequence" is determined by the finder of fact – not the officer and not the target of the threat.  Officer Dexter and Chief Beaupre exhibit a fundamental misunderstanding of what constitutes terrorizing under Maine law.

An officer is not acting within his discretion if he is unaware of the state of the law that authorizes him to act and the policies and procedures which require him to act, or if he chooses to act in contravention of the established policies and procedures which require action.

**c.) When an otherwise discretionary act directly contributed to the harm, the state-created harm doctrine should apply in the Equal Protection Context as it does in Due Process cases.**

Finally, as argued below, (see Count II) the Defendants actions are an example of state-created harm.  Plaintiffs argue that for actions or omissions that would otherwise be considered to be discretionary, the state-created harm doctrine should be similarly applied as it is in the

Due Process context.    For the above reasons, Plaintiffs assert that they have established the necessary elements of a claim pursuant to 42 U.S.C. § 1985.

## II. Count II Violation of 42 U.S.C. § 1983-Edward Dexter

The Defendants argue that they did not violate Ms. Johnson, Mr. Thompson or Ms. Welch's rights under the substantive due process clause of the Fourteenth Amendment to the United States Constitution.  In order to successfully establish a substantive due process claim, the Plaintiff must "first show a deprivation of a protected interest in life, liberty or property. *Rivera v. Rhode Island*, 402 F.3d 27, 31 (1st Cir. 2005) (citing *Rhode Island Bhd. Of Correctional Officers v. Rhode Island,* 357 F.3d 42, 49 (1st Cir. 2004)).  In the instant case, Thompson and Welch were deprived of their lives and Johnson was deprived of her right to bodily integrity.  All three were deprived of the right to quiet enjoyment of their residence.

Second, the Plaintiff must show that the deprivation of this protected right was caused by governmental conduct.  *Rivera*, at 34.  "There are scenarios in which government involvement with a private individual amount to government conduct.  *Id.*  "A State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489. U.S. 189, 197; 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)."  The Due process clause protects the people from the State, not to ensure that the State protects them from each other.  *Rivera* at 34.

However, *DeShaney* left open the potential for a claim under the state-created danger theory.  "While the state may have been aware of the dangers that the plaintiff faced in the free

world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998.

The Court in *Rivera* pointed out that "[t]hree other circuits have recognized the existence of a constitutional violation when, on particular facts, the state fails to protect against private violence under this state created danger theory.  See *Kallstrom v. City of Columbus, 136 F. 3d 1055, 1066-67 (6th Cir. 1998); Reed v. Gardner, 986 F.2d 112, 1125-26 (7th Cir. 1993); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989).*  The Fifth Circuit has rejected the theory.  *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004).  The fourth circuit has discussed the theory.  *Pinder v. Johnson,* 54 F.3d 1169, 1175-76 (4th Cir, 1995)*(en banc).  Rivera* at 35.

The First Circuit has previously recognized the state created danger theory, but had never found it actionable on the specific facts alleged.  (Please see section V for a collection of the First Circuit cases recognizing the theory.)  In addition, in a state-created danger case, "the actions must shock the conscience of the court."  *Hasenfus*, 175 F.3d at 73.

In *Irish v. Maine*, 849 F.3d 521 (1st Cir. 2017) the First Circuit relied on the framework spelled out in *Rivera* to remand a motion to dismiss for further proceedings.  The Court indicated that whether the Police acted in accordance with policy would be largely instructive on the issue of the "state's role" in the creation of the danger.

The Defendants agree that the troopers in *Irish* exacerbated the danger to Irish but argue that Officers Dexter and Wolterbeek did not create or exacerbate the danger to Plaintiffs.  Plaintiffs argue that there is more in common between these two cases than just a tragic outcome.  Like in *Irish*, James Pak made specific threats to harm Johnson, Thompson and Welch.  In *Irish*, Officers promised protection that fell short, and in the instant case Officer

10

Dexter told Ms. Johnson that officers would deal with the harassment and criminal threats and instead took no action.  One difference is that Ms. Irish was aware of the nature of the danger that she faced based on Lord's previous threats and actions.  Officer Dexter exacerbated the danger faced by Johnson, Thompson and Welch because he did not communicate the level of Pak's threats or aggression to them so that they could take adequate safety precautions.

The Defendants rely on Thompson's statement that he was not afraid to disclaim any further responsibility.  However, this statement was made in response to Pak's initial interaction with Thompson, and was made while Thompson was being interrupted. nNeither Johnson nor Welch was asked about their fear, nor was this question asked after Officer Dexter interacted with Pak. The Defendants argue that there was no specific request for protection like in *Irish*, however law enforcement officers were called to respond to the scene by the Plaintiffs, Johnson repeatedly asked about whether Pak was calm, and Thompson asked whether Pak would be normal.  In the face of the overwhelming agitation and threatening behavior that Officer Dexter observed, these questions should have been perceived as a request for protection.  He certainly should have at the very least given an honest recounting of Pak's demeanor and threats to the subject of those threats.

Officer Dexter exacerbated the risk of danger by spending time with Pak and leaving while he was still making threats and still extremely agitated.  Even as Officer Dexter was wrapping the conversation up, Pak's threats continued including stating it would be a bloody mess and that people would read about him in the newspaper the following day.  These statements coupled with Pak's repeated insistence that he had no rights and had nothing to lose

are strong indications that Pak was not of sound mind on December 29th, 2012.  Officer Dexter ignored this risk.

The Defendants repeatedly refer to "an affirmative act" in their memorandum.  The State-created harm doctrine does not require an affirmative action.  It requires that the state action created or exacerbated the danger, or that it rendered the victims more vulnerable.  In both of these standards, action can fairly be read to encompass a failure to act or an omission, as long as that failure to act meets the standard.  In the instant case, Plaintiffs have shown that Officer Dexter's failure to act, or at a minimum provide adequate warnings to the Plaintiffs in the face of direct threats, in violation of statute, policy and procedure, is an omission that rises to the level of exacerbating the danger faced by the Plaintiffs as well as rendering them more vulnerable to the danger.  Furthermore, Officer Dexter did not diffuse or deescalate Mr. Pak during the extended interaction and conversation he had with Mr. and Mrs. Pak.  Officer Dexter left 17 Sokokis Road having told Thompson, Johnson and Welch that it appears they will have continued run ins with Mr. Pak and that he continued to be agitated and angry.  For the above-enumerated reasons, Officer Dexter is not entitled to summary judgment on this claim.

**III. Count III Violation of 42 U.S.C. § 1983-Jacob Wolterbeek**

Officer Wolterbeek was aware that the reason for the initial call to 17A Sokokis road was because James Pak had made threatening statements to Thompson.  Wolterbeek cleared the scene prior to Officer Dexter.  By failing to further investigate the threats he violated the statutory protection described in I(a), the policies and procedures as argued in I(b) and for the

reasons enumerated in II the state-created doctrine applies to his conduct.  As such, he is not entitled to summary judgment on this claim.

## IV. Count IV Violation of 42 U.S.C. § 1983-Roger Beaupre

For the reasons argued in II and III, the actions of Officers Dexter and Wolterbeek are not entitled to summary judgment.  In order for the chief or the municipality to incur liability pursuant to § 1983 there must first be a finding that the plaintiff's harm was caused by a constitutional violation, and second that the Town is responsible for that violation.  *Young v. City or Providence*, 404 F.3d 4 25-26 (1st. Cir. 2005).  For the reasons argued in I and II, Plaintiffs have proven that the harm was caused by a constitutional violation.

Whether the town can be held responsible has three inquiries.  First, the action must constitute a 'policy or custom' attributable to the Town; that policy or custom must have caused the injury; and "the municipality possessed the requisite level of fault."  *Id.*  With respect to the first prong, Roger Beaupre and the City of Biddeford were responsible for training and supervising Officers Dexter and Wolterbeek.  Roger Beaupre was responsible for approving and enacting the policies and procedures with which the officers are required to comply.  Specifically, the policies and procedures discussed in I(a) and I(b) are applicable to this claim.

Roger Beaupre was also tasked with ensuring that officers received training including yearly legal and case law updates.  Roger Beaupre failed to ensure that his employees were adequately trained on the policies and the relevant case law.  Officer Dexter failed to understand the elements of the misdemeanor statute of terrorizing.  This misunderstanding played a fundamental role in the failure to properly respond to the threats that James Pak made directly to Officer Dexter.  The record shows that Roger Beaupre similarly failed to understand

13

the statute of terrorizing and still misunderstands it, to this day.  This failure to properly understand the criminal code and therefore the failure to ensure that his employees understood the criminal code led directly to the failure to properly respond to James Pak's threats.

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be held liable for such a failure under § 1983."  *Id.* at 389.   Liability for failing to train governmental employees can be based on only one incident of harm and the single decision of one policy maker.  *Brown v. Bryan County OK*, 219 F.3d 450, 460 (5th Cir. 2000).  Furthermore, "[t]he First Circuit stated, however, that `[t]he Supreme Court has left open the possibility that a failure-to-train claim can succeed without showing a pattern of previous constitutional violations.' *Young* [*v. City of Providence*], 404 F.3d [4] at 28 (quoting *Swain v. Spinney*, 117 F.3d 1, 11 (1ˢᵗ Cir. 1997); *see Brown,* 520 U.S. at 409, 117 S.Ct. 1382. '[L]iability without such a pattern will be appropriate `in a narrow range of circumstances,' where `a violation of [a] federal right [is `a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'' *Young,* 404 F.3d at 28 (quoting *Brown,* 520 U.S. at 409, 117 S.Ct. 1382). *Young* cites a failure to train officers on the constitutional limitations on the use of deadly force when seeking to arrest fleeing felons. *Id.*"  *Buchanan ex rel. Estate of Buchanan v. Maine*, 417 F.Supp.2d 45, 67 (D. Me., 2006).

Finally, Plaintiffs have shown that the Town possesses the requisite level of fault which is "deliberate indifference."  *Young v. City of Providence*, 404 F.3d 4, 25-26.  (1ˢᵗ Cir. 2005).  In *Young,* the Court held that the Plaintiffs had made a demonstrable showing that the City was deliberately indifferent in "its training and lack of protocols in this area and that the training

deficiencies and absence of protocols were causally linked" to Plaintiff's claim.  In that case, the court remanded the case for jury trial on the Plaintiff's claim that the City violated 42 U.S.C. § 1983 by failing to adequately train the officer in a manner that was causally related to the Plaintiff's deprivation of constitutional rights and deliberately indifferent to those constitutional rights.  "[T]he failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program is closely related to the ultimate injury."  *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed2d 412 (1989).  Indifference can be shown by either a pattern of constitutional violations, or in circumstances in which "a violation of a federal right" is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  Summary judgment is not warranted in a situation in which the jury could find that the department knew that a constitutional violation was a predictable consequence of the department's failure to train and therefore deliberately indifferent to the Plaintiffs' constitutional rights.

Indifference can also be inferred from the City's conduct after the incident.  Roger Beaupre did not speak with either officer following the incident.  Nor did he conduct an investigation into the incident or request any such investigation be conducted.  Without reading the reports written by the officers or speaking with them directly, he made the conclusion that nothing could have been changed in the way the officers responded.  Without listening to the audio of James Pak, he made the erroneous conclusion that the terrorizing statute did not apply to Pak's conduct.  The applicable policies and procedures were not reviewed with the officers

15

involved, nor was the incident reviewed with any other officers in the department for further learning opportunities.  The lack of follow-through after the incident indicates an indifference toward the application of the City's own policies and procedures.  The lack of knowledge surrounding the criminal code, which every member of the department is sworn to uphold and enforce, shows an indifference toward the administration of the policies and procedures enacted by the city.  This indifference led directly to the harm suffered by the Plaintiffs.

## V.  Qualified Immunity as it Applies to Counts I-IV

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. The court generally [should] address first the question whether at some abstract level the plaintiffs have asserted a violation of constitutional rights, second whether those rights are clearly established, and third whether a reasonable officer could have concluded that his actions did not violated the plaintiffs' constitutional rights.

*Buchanan v. Maine*, 469 F.3d 158, 160 (1st. Cir.2006) (internal citation and punctuation omitted); *see also Jordan v. Carter* 428 F.3d. 67, 71-72 (1st Cir.2005); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

### 1.  Assertion of a Violation of Constitutional Rights

 "The first step taken in analyzing the claim in the light most favorable to the party asserting the injury is to ask the question, do the facts alleged show that the officer's conduct could have violated a constitutional right?"  *Monge v. Cortes*, 413 F.Supp. 2d 42, 53 (D. Puerto Rico 2006).  Plaintiffs have alleged a violation of equal protection; due process and the right of quiet enjoyment as noted above.

### 2.  Clearly Established Rights

16

"[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* 533 U.S. at 202. "[T]he law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." *Jennings v. Jones*, 499 F.3d 2, 16 (1st. Cir. 2007) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

The Defendants argue that even if the Plaintiffs successfully prove a violation of a constitutional right, that the qualified immunity doctrine would protect individuals such as Officers Dexter and Wolterbeek and Chief Beaupre, "so long as the violations were not of clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Pearson v. Callahan* 555 U.S. 223, 234 (2009).

The Defendants allege that at the time of the incident, it was not clearly established whether the state-created danger doctrine applied in the State of Maine or the Federal District of Maine. In *Rivera*, the Court pointed out that the First Circuit had previously discussed the state created danger theory, but had never found it actionable on the specific facts alleged. *Rivera* at 35. *Rivera* referenced the following examples: "The Due Process Clause may be implicated where the government affirmatively acts to increase the threat to an individual of third-part private harm." *Coyne v. Cronin,* 386 F.3d 280, 287 (1st. Cir. 2004); "Where a state official acts so as to create or even markedly increase a risk, due process constraints may exist, even if inaction alone would raise no constitutional concern." *Hasenfus v. LaJeunesse*, 175 F.3d 68, 73 (1st Cir. 1999); "A government employee can in a 'rare and exceptional case,

affirmatively act  [] to increase the threat of harm to the claimant or affirmatively []prevent the individual from receiving assistance.  *Frances-Colon v. Ramirez,* 10 F.3d 62, 64 (1st Cir. 1997); When the State, through its affirmative acts, creates or greatly enhances the danger faced by the plaintiff from third parties a substantive due process violation can arise.  *Soto v. Flores, 1*03 F.3d 1056, 1063-64 (1st Cir. 1997).  All of these cases precede 2012 by quite some time.  It was the policy of the Biddeford Police Department to require annual trainings updating the officers on the current state of the law.

The *Webb* case relied upon by the Defendants to urge dismissal can be distinguished from this case for a number of reasons.  *Webb v. Hass*, 728 A. 2d 1261 (Me. 1999.)  First, although *Webb* was decided in 1999, the conduct in question in Webb occurred in 1989, the same year that the *DeShaney* case was argued.  It does not appear that the Plaintiffs in *Webb* pursued a state-created danger theory of violation of Due Process rights.  Rather, the case focused on the deprivation of an individual's right to access to the courts.  The *Webbs'* claim was that because the Maine State Trooper in question gave a false statement about his investigation, their access to state law action against the perpetrators of the crime and the Trooper himself was impeded.  The Law Court specifically held that "In 1989, a reasonable officer would not have understood that a cover-up of a violation of state police procedure deprived the Webbs of their right to access to the courts." *Webb, ¶ 15.*  It is clear from this passage, that the "state of the law" which the Law Court is addressing is in regards to the cover-up and the right to access to the courts.

The Maine Supreme Judicial Court pointed out that there was no allegation that Haas was involved in the perpetration of the murder or abduction, nor was there an allegation that

18

Haas attempted to conceal the identity of the perpetrator and therefore, Haas's conduct does not rise to the level of a constitutional violation as understood or as apparent in 1989. *Webb* at ¶ 16, 1266-67. As stated above, this is distinguishable from the instant case, in that the constitutional violation being discussed is the access to court. It is also distinguishable on its facts from the instant case. Officer Dexter witnessed James Pak making direct threats about Johnson and Thompson in Dexter's presence. Officer Dexter failed to take any action to curb that threat and as a direct result two people died and one was seriously injured. In *Webb*, the allegation is that the trooper failed to investigate an already committed crime. While his failure was a violation of policy and procedure, and likely hindered the investigation into the perpetrators, his action did not cause the loss of life to Webb. Nor did his failure to investigate the empty truck create or enhance the danger to Webb. As discussed above (section II), the harm to Thompson, Johnson and Welch was foreseeable and Officer Dexter's actions enhanced the danger to the family and placed them in a more vulnerable position. For the above reasons, at the time of the action, there was a clearly established doctrine of state-created harm, and the instant case falls within that doctrine.

The final inquiry is "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional at issue." *Jordan*, 428 F.3d at 72. As discussed above Biddeford Police Department policies required an arrest be made on the facts of this case. For that reason alone a reasonable officer would have known that there was a violation of Plaintiffs' constitutional rights.

For the above reasons, at the time of the action, there was a violation of Plaintiffs'

clearly established constitutional rights.  Therefore, the qualified immunity doctrine relied upon

by the Defendants does not apply to bar the federal claims of the Plaintiffs' complaint.

## VI.  Wrongful Death 18-A M.R.S.A. §2-804

Defendants argue that Plaintiff failed to plead a claim for the wrongful death of Derrick

Thompson.  Defendants are correct that the Wrongful Death Statute does not confer any

separate cause of action.  *Jackson v. Town of Waldoboro,* 751 F. Supp. 2D 263, 264 (D. Me.

2010).  However, it does provide a mechanism for recovery by the decedent's personal

representative for the death itself or suffering prior to death.  For the reasons articulated above,

Johnson has alleged that the Defendants' negligence directly caused Thompson's death.  As

such, this count is appropriate.

The Defendants further argue that the Maine Tort Claims Act limits the claims against

the City of Biddeford.  For the reasons enumerated below, in X, Plaintiffs contend that the

Discretionary Function immunity provided by the MTCA is inapplicable to the facts at hand.

## VII.  Intentional Infliction of Emotional Distress (Johnson Counts VII, X, XII)

The four elements of intentional infliction of emotional distress are that (1) the

defendant intentionally or recklessly inflicted severe emotional distress; (2) the conduct was so

extreme and outrageous as to exceed all possible bounds of decency; (3) the actions of the

defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by

the plaintiff was so severe that no reasonable person could be expected to bare it.  *Curtis v.*

*Porter*, 784 A.2d 18, 20 (Me. 2001).

20

Defendants argue that Plaintiffs' claims fail on the element of proximate cause. Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred." *Searles v. Trustess of St. Joseph's College*, 980 F.2d 48, 52 (1st Cir. 1992). Proximate cause is usually a question for the jury and as such is not properly determined in a motion for summary judgment. *Perron v. Peterson,* 593 A.2d 1057, 1058 (Me. 1991). Defendants rely on *Webb* for the proposition that an officer's acts or omissions do not rise to the level of proximate cause in Plaintiff's injuries.

For the reasons enumerated above in V.2., the instant case can be distinguished from the *Webb* case.  In *Webb*, the officer's omissions were *after* the act responsible for the death of Pamela Webb had already occurred.  While the officer in that case may have hindered the apprehension of the culprit, his actions cannot fairly be said to have contributed to or allowed the culprit's actions.  In the instant case, however, Officer Dexter was confronted with specific, immediate and direct threats by James Pak.  James Pak specifically indicated that he had threatened to shoot the occupants of 17A Sokokis road, and his actions and demeanor, including saying, "there will be a bloody mess" were observed by Officer Dexter.  The failure to act on these observations were a substantial factor in bringing about the harm caused to Plaintiffs.  Within 4 minutes of Officer Dexter clearing the scene, two residents were dead and one had been seriously injured.  As argued above, his failure to act was a direct cause of the harm to plaintiffs.  For this reason, these claims should survive summary judgment.

**VIII. Negligent Infliction of Emotional Distress (Johnson Counts VIII, XI, XIII)**

In order to prevail on a claim of negligent infliction of emotional distress, plaintiffs must prove that there was a special relationship between the actor and the person emotionally harmed.  Plaintiffs argue that while there is no general duty for police officers to protect the public, once an Officer intervenes and engages with members of the public, he has created a special relationship between himself and the person(s) with whom he is interacting.  In the instant case, the occupants of 17A Sokokis road sought help from the police department and Officers Dexter and Wolterbeek responded.  In their words and deeds described above, they failed to follow the appropriate policies and procedures as well as the law that applied to the circumstances at hand.  By responding under the premise of protecting the residents, the officers created a special relationship with those occupants such that they were responsible to avoid negligently causing harm to the occupants.  As argued in above, in VII, their failure to follow procedures was the proximate cause of the plaintiffs' injuries.  For these reasons, these claims survive summary judgment.

## IX.  Assault and Battery (Johnson Count IX)

For the reasons argued above, in I, Plaintiff Johnson alleges that Officer Dexter conspired with James Pak. Pak acted to intentionally harm Johnson, and harmful contact with Johnson was the direct result fo that action.  James Pak's conduct satisfies the elements of assault and battery.  Restatement of the Law, Second, Torts, § 13 (1965).  For reasons argued above, Officer Dexter's failure to act could fairly be interpreted as intentionally allowing Pak to harm Plaintiff.  For this reason, this count should survive summary judgment.

**X. Tort Claims – Discretionary Function Immunity**

The Maine Tort Claims Act affords immunity to those government employees "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." 14 M.R.S.A. § 8111(1)(C). Defendants are correct that the exercise of force is a discretionary function or a law enforcement officer. *Comfort v. Pittsfield*, 924 F.Supp. 1219, 1236 (D. Me. 1996). However, the immunity afforded under the Maine Tort Claims Act is not absolute. Immunity will not protect a law enforcement if they "clearly exceed, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers]." *Id.* (quoting *Lyons v. City of Lewiston*, 666 A.2d 95, 101 (Me. 1995)). For the reasons argued above, the officers exceeded the scope of the discretion they possessed and therefore should not be protected by immunity.

<u>Conclusion</u>

Because Plaintiffs, Susan Johnson and Jocelyne Welch, have shown a genuine issue of material fact regarding the remaining counts in the complaint and as such Defendants' Motion for Summary Judgment must be denied.

Nichols & Churchill, P.A.

Dated: August 15, 2019          By:   <u>/s/ Sarah A. Churchill_____</u>
                                       SARAH A. CHURCHILL, ESQ.
                                       Maine Bar Reg. No. 9320
                                       Attorney for Plaintiff

Nichols & Churchill, P.A.
1250 Forest Avenue
 Portland, ME 04103
207-879-4000
schurchill@nicholschurchill.com

Dated: August 15, 2019                 Law Office of Kristine C. Hanly


By:    _/s/ Kristine C. Hanly_____
       KRISTINE C. HANLY, ESQ.
       Maine Bar Reg. No. 4500
       Law Office of Kristine C. Hanly
       d/b/a Hanly Law
       217 Commercial Street
       Suite 205
       Portland, ME 04101
       207-699-2278
       Email: kristine@hanlylaw.com

## Certificate of Service

I hereby certify that on this date, I electronically filed **Plaintiff's Objection to Defendant's Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Douglas Louison
dlouison@lccplaw.com

Joseph Padolsky
jpadolsky@lccplaw.com

Nichols & Churchill, P.A.

Dated: August 15, 2019     By:    /s/ Sarah A. Churchill_____
SARAH A. CHURCHILL, ESQ.
Maine Bar Reg. No. 9320
Attorney for Plaintiff Welch

Nichols & Churchill, P.A.
1250 Forest Avenue
Portland, ME 04103
207-879-4000
schurchill@nicholschurchill.com

Dated: August 15, 2019     By:    Law Office of Kristine C. Hanly

 /s/ Kristine C. Hanly_____
KRISTINE C. HANLY, ESQ.
Maine Bar Reg. No. 4500
Law Office of Kristine C. Hanly
d/b/a Hanly Law
217 Commercial Street
Suite 205
Portland, ME 04101
207-699-2278
Email: kristine@hanlylaw.com